# Supreme Court of Florida

_____

No. SC13-2450
_____

**STEVE LAWRENCE GRIFFIN,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[March 12, 2015]

LABARGA, C.J.

Steve Lawrence Griffin seeks review of the decision of the Second District Court of Appeal in Griffin v. State, 128 So. 3d 88 (Fla. 2d DCA 2013), on the ground that it expressly and directly conflicts with a decision of this Court in State v. Montgomery, 39 So. 3d 252 (Fla. 2010), and decisions of other district courts on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. The question before us is whether the giving of an erroneous manslaughter by act jury instruction cannot be found to be fundamental error if the defendant's sole defense is misidentification. For the reasons that follow, we quash the Second District's decision in Griffin.

## BACKGROUND AND FACTS

Griffin was charged with the January 15, 2011, second-degree murder of Thomas Jamar Mills, who was killed by a shotgun blast while sitting in a Ford Expedition vehicle at "The Purple Store" in Sarasota. The evidence showed that Griffin, Mills, and his girlfriend, Ester Deneus, were friends. Griffin did not deny being in his truck parked on the passenger side of Mills' vehicle at The Purple Store. Deneus testified that after getting out of the passenger side of the Expedition and heading toward the store, she heard Griffin say to Mills, "What's up now, TJ?" She heard Mills respond with something to the effect of "What do you mean, what's up?" and "You want to play with guns now?" Deneus testified that she heard a gunshot and saw Griffin pull what appeared to be a long gun back into the driver's side window of his truck and then speed away very quickly.

The State presented evidence that on the day of the shooting, Griffin and Mills had an argument at the home that Mills and Deneus shared, and that Mills physically picked Griffin up and placed him outside the door. According to Deneus, Griffin's pants fell down and everyone laughed. Griffin testified in his own defense that he was good friends with Mills and that they all frequently teased each other and joked around. He told the jury that he was not mad at Mills that day and that he did not hear any laughter when his pants fell down. Griffin also testified that prior to Mills' death, he had observed Mills carrying large amounts of

cash as well as drugs, and that on the morning of the shooting, Mills had asked Griffin to deliver some drugs for him, but Griffin refused. According to Griffin, on the evening that the shooting occurred, he was driving with a friend who wanted to go to The Purple Store to buy single cigarettes, which The Purple Store was reported to sell. Griffin testified that he and his friend were in Griffin's truck at an intersection across from where Mills' vehicle was stopped. Griffin said he made a U-turn to go to The Purple Store but denied he did it to follow Mills. Once he made the U-turn, he said he was behind Mills' vehicle and both vehicles pulled into the parking lot of The Purple Store. Griffin testified that he did park next to the passenger side of Mills' vehicle where Deneus exited, and that he and Mills did speak. Griffin said he then closed his window and listened to the radio with the sound "all the way up." He testified that when he saw an individual wearing a black jacket walk in front of Mills' SUV, pull out a sawed-off shotgun, and shoot Mills, he got scared and drove away.

At the conclusion of the trial, the judge instructed the jury that to prove the crime of second-degree murder, the State must prove that the killing of Mills was by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. Pursuant to the standard jury instruction for second-degree murder, the judge defined depraved mind, in pertinent part, to include ill will, hatred, spite, or evil intent. Fla. Std. Jury Instr. (Crim.) 7.4. The judge

further instructed the jury that to prove second-degree murder, the State did not need to prove the defendant intended to cause death. As to the lesser included offense of manslaughter, the court instructed the jury, in pertinent part, that the State must prove "Steve Griffin intentionally caused the death of Thomas J. Mills." No objection was lodged to this instruction, even though in 2010 we held that the same instruction was erroneous because intent to cause death was not an element of the crime of manslaughter by act.[1] Griffin was convicted of second-degree murder and sentenced to forty-five years in prison, with a twenty-five-year minimum mandatory term.

On appeal to the Second District Court of Appeal, Griffin raised this erroneous manslaughter instruction as fundamental error, citing Montgomery. In Montgomery, we held that use of the erroneous 2006 standard jury instruction as to manslaughter by act, requiring that in order to convict for that lesser offense the jury must find that the defendant intended to cause the death of the victim, was fundamental error where the defendant was convicted of a crime no more than one step removed from manslaughter. Montgomery, 39 So. 3d at 259. We also explained in Montgomery:

> "fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict." Failing to instruct on an element of the crime over which the record reflects there

_____

1. Section 782.07, Florida Statutes (2011).

- 4 -

was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal.

Montgomery, 39 So. 3d at 258 (quoting State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991)).

The Second District agreed that the jury instruction on manslaughter given by the trial court in Griffin's case was erroneous. Griffin, 128 So. 3d at 89. However, the district court rejected the claim of fundamental error, explaining:

> The State also argues that giving the instruction in this case did not constitute fundamental error because the intent element was not disputed at trial. We agree. The supreme court has "long held that fundamental error occurs in a jury instruction where the instruction pertains to a disputed element of the offense and the error is pertinent or material to what the jury must consider to convict." Haygood v. State, 109 So. 3d 735, 741 (Fla. 2013) (citing State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991)). This standard is equally applicable in the context of the Montgomery instruction on manslaughter by act. See Daniels v. State, 121 So. 3d 409, 409, 417 (Fla. 2013); Haygood, 109 So. 3d at 742; Montgomery, 39 So. 3d at 258.
>
> In this case, the State presented eyewitness testimony that Griffin pulled up next to the victim's vehicle in a convenience store parking lot and had words with him through the windows. Then Griffin pulled out a long black gun, put it through the window, and shot the victim in the neck where he sat. Griffin's sole defense was mistaken identity. Griffin admitted that he pulled his vehicle up next to the victim's vehicle and had a conversation with him. He claimed that an unknown individual walked between the vehicles to the victim's window, pulled out a shotgun, pointed it at the victim, and shot him.
>
> Griffin did not argue that the manner of the shooting did not establish the requisite intent; he simply argued that he was not the perpetrator. There is no dispute regarding the elements of an offense when the manner of the crime is conceded and the sole defense is mistaken identity. Battle v. State, 911 So. 2d 85, 89 (Fla. 2005). Because there was no dispute regarding the element of intent, the

- 5 -

erroneous jury instruction on the intent element of the lesser included offense of manslaughter did not constitute fundamental error.

Griffin, 128 So. 3d at 90. Thus, the district court rejected the claim of fundamental error in Griffin's case because, it concluded, when Griffin claimed misidentification, he failed to place any of the other elements of the offense in dispute, including the element of intent. The Fourth District Court of Appeal has disagreed with the contention that a defense of misidentification concedes the intent by which the homicide was committed. See Wimberly v. State, 39 Fla. L. Weekly D1884 (Fla. 4th DCA Sep. 3, 2014) ("We do not agree with the State's argument that the issue of intent was not disputed. Although petitioner argued misidentification at trial, he did not concede the intent with which the shooting was committed."). We are therefore called upon to decide if the Second District was correct when it held that Griffin's sole defense of misidentification conceded, or failed to place in dispute, the issue of intent.

## ANALYSIS

The issue in this case presents a pure question of law; thus, our review is de novo. See, e.g., Puglisi v. State, 112 So. 3d 1196, 1204 (Fla. 2013); D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 (Fla. 2003). We begin by reaffirming that our precedent requires that, for an unpreserved error in jury instruction to be found fundamental on appeal, the error must be "pertinent or material to what the jury must consider in order to convict." Montgomery, 39 So. 3d at 258 (quoting Delva,

- 6 -

575 So. 2d at 645).  However, we are constrained to hold that a sole defense of misidentification does not concede or fail to place in dispute intent or any other element of the crime charged except identity when the offense charged is an unlawful homicide.  The district court concluded that where identity is the defense, "[t]here is no dispute regarding the elements of an offense when the manner of the crime is conceded and the sole defense is mistaken identity."[2]  Griffin, 128 So. 3d at 90.  The district court therefore assumed that the "manner of the crime" in this case included the intent with which the crime was committed, that intent being ill will, spite, or evil intent required for second-degree murder.  However, the "manner" of the crime was simply death by gunshot.  Because he testified that he

2. The district court relied on our decision in Battle v. State, 911 So. 2d 85 (Fla. 2005), in which we held no fundamental error occurred in a faulty instruction on an essential element of attempted felony murder.  However, the element at issue in Battle was whether the defendant committed, aided, or abetted an intentional act that was not an essential element of the underlying felony of attempted robbery.  We stated, "It was undisputed that [the victim] was shot in the head, an act that was not an essential element of the attempted robbery."  Id. at 87.  We noted in Battle that the defendant did not dispute that the crime occurred, but claimed misidentification.  Our analysis in Battle is not dispositive here, where the matter at issue involves the question of intent behind the shooting, which determines what level of unlawful homicide has been committed; whereas, in Battle, the question was whether the undisputed shooting was an essential element of the underlying felony of attempted robbery.  Moreover, in Battle, we cited the case of Morton v. State, 459 So. 2d 322, 324 (Fla. 3d DCA 1984), as an example of a case in which the crime of robbery was "not disputed."  Id.  In Morton, defense counsel expressly conceded in opening statement that the defense was not disputing the fact that the victims were robbed.  Id.

saw Mills shot, Griffin can be said to have conceded that Mills died by gunshot, but he cannot be found to have expressly or impliedly conceded the intent underlying that shooting simply by challenging the element of identity of the shooter. Griffin did not concede any element of second-degree murder by testifying and asserting that he did not pull the trigger.

The district court's analysis and conclusion overlook the fact that Griffin did not have an obligation to argue that the manner of the shooting did not establish the requisite intent, or to expressly dispute any other elements of the crime. Without dispute, Mills was killed by a gunshot through the window of the vehicle in which he was sitting. This simple fact, standing alone, does not establish the intent, or lack of intent, by which the shooting occurred—and thus it does not establish what degree of homicide may have been committed. It must be remembered, as we said long ago, that "[t]he plea of not guilty puts in issue every material element of the crime charged in the information, and before a jury is warranted in returning a general verdict of guilty against an accused every material element of the crime charged must be proved to their satisfaction beyond all reasonable doubt." Licata v. State, 88 So. 621, 622 (Fla. 1921).

Where a defendant sits mute and exercises his or her right to remain silent, the burden is on the State to prove all elements involved in the degree of the homicide for which the defendant is convicted. It defies logic to conclude that

- 8 -

expressly disputing the identity of the perpetrator and remaining silent on the remaining elements of the crime would concede all the elements but identity. The State's burden of proof does not change simply because the defendant speaks up and contests one element, such as his identity as the perpetrator.

When the question before the jury is whether an unlawful homicide occurred, and the jury finds that the killing was not justifiable or excusable, the jury must then determine the degree of the offense based upon the intent, if any, that the State proves existed at the time of the homicide. A homicide found to be unlawful is not automatically just one offense, but will be one of several possible homicide offenses depending upon the nature of the intent or the lack of any intent at the time of the homicide. For example, if the State has charged first-degree murder, a necessary jury inquiry is whether the State proved premeditated intent to kill. Lacking that proof, the jury must then determine whether the defendant killed "by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life." Fla. Std. Jury Instr. (Crim.) 7.4. "Imminently dangerous to another and demonstrating a depraved mind" is defined in pertinent part as an act that "is done from ill will, hatred, spite, or an evil intent." If the jury concludes that the killing was neither premeditated nor done with a depraved mind as that term is defined, the jury must then decide if the defendant is guilty of manslaughter by having committed an intentional act that resulted in death, but

without any intent to kill or evil intent (depraved mind) on the defendant's part. Thus, it can be seen that in every killing alleged to be an unlawful homicide, the jury must necessarily consider the intent behind the killing, or find lack of any intent behind the killing, before it can determine what, if any, offense has been committed.

Certainly, where a defendant expressly concedes one or more elements of a crime, those elements can be characterized as no longer in dispute for purposes of a fundamental error analysis. See, e.g., Stewart v. State, 420 So. 2d 862, 863 (Fla. 1982) (holding that failure to instruct on element of intent to permanently deprive another of property in robbery prosecution was not fundamental error where the defendant "admitted that he stole personal property from the victim"); Morton, 459 So. 2d at 324 (element of intent to permanently deprive not in dispute where defendant conceded robbery occurred). In the present case, other than the fact that Mills was shot, Griffin did not concede any other elements of the crime charged; he simply contested his identity as the perpetrator. The State's burden still remained to prove that the shooting was done with a depraved mind, but without intent to kill, as set forth in the standard jury instructions. Thus, we conclude that intent remained a matter that was pertinent or material to what the jury must

consider in order to convict Griffin of the crime charged or a lesser included offense, notwithstanding his claim of misidentification.[3]

A defendant is entitled to an accurate instruction on the charged offenses and all lesser included offenses.  See Montgomery, 39 So. 3d at 258; see also Williams v. State, 123 So. 3d 23, 29 (Fla. 2013); Haygood, 109 So. 3d at 742 (citing Montgomery, 39 So. 3d at 258).  We explained in Montgomery, "Characterized by what it is not, manslaughter is considered a residual offense.  Consequently, we have held that the failure to provide a complete instruction on manslaughter may constitute fundamental error."  Montgomery, 39 So. 3d at 258 (citation omitted).  "This is true regardless of whether there is ample evidence to convict the defendant of the higher crime."  Williams, 123 So. 3d at 29.  " '[W]hether the evidence of guilt is overwhelming or whether the prosecutor has or has not made an inaccurate instruction a feature of the prosecution's argument are not germane to whether the error is fundamental.' "  Id. (quoting Reed v. State, 837 So. 2d 366, 369 (Fla. 2002)).

In this case, once the jury determined that the homicide was not justifiable or excusable, the intent underlying the unlawful homicide was pertinent or material to

_____

    3.  Moreover, even though Griffin had no burden to prove the intent by which the homicide occurred, or his lack of intent, we note that the evidence in this case, the argument of counsel, and the jury instructions themselves did place the element of intent in dispute.

what the jury had to consider in order to convict Griffin of second-degree murder or the lesser offense of manslaughter by intentional act. Griffin's claim of misidentification did not concede the element of intent as to the shooting, and he was entitled to an accurate instruction as to manslaughter, which he did not receive. By convicting Griffin of second-degree murder, the jury necessarily found that he possessed no intent to kill—and the State conceded as much by charging second-degree murder. In addition, the jury was instructed that "[i]n order to convict of Second Degree Murder, it is not necessary for the State to prove the defendant had an intent to cause death." Because the manslaughter instruction given to the jury erroneously required that to convict for the lesser included offense of manslaughter by act, the jury must find Griffin committed an act intended to cause Mills' death, the jury was essentially foreclosed from finding Griffin guilty of that lesser offense when they found he had no intent to kill.

## CONCLUSION

Manslaughter is a category one lesser included offense of second-degree murder for which a defendant is entitled to a correct instruction. Both second-degree murder and manslaughter are homicide offenses that involve the issue of "intent"—either ill will, hatred, spite, or evil intent as is embodied in the depraved mind element of second-degree murder or the lack of any intent to kill as in the offense of manslaughter. Thus, the intent with which a homicide occurs is a matter

- 12 -

that is pertinent or material to what the jury must consider in order to convict a defendant of either crime. Because Griffin was convicted of second-degree murder, an offense only one step removed from manslaughter, and because he did not concede the intent by which the homicide was committed, proof of that issue remained on the State, and remained in dispute notwithstanding Griffin's defense of misidentification. Thus, fundamental error occurred which requires a new trial. Accordingly, we quash the decision of the Second District in Griffin v. State, and remand this case for a new trial.

It is so ordered.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Second District - Case No. 2D11-4728

(Sarasota County)

Howard L. Dimmig, II, Public Defender, and Karen Mary Kinney, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Robert Jay Krauss, Bureau Chief, and Dawn A. Tiffin, Assistant Attorney General, Tampa, Florida,

for Respondent