# Supreme Court of Florida

_____

No. SC16-54
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**DAMANI SPENCER,**
Respondent.

[April 27, 2017]

LABARGA, C.J.

This case is before the Court for review of the decision of the First District

Court of Appeal in Spencer v. State, 40 Fla. L. Weekly D2819, 2015 WL 9287020

(Fla. 1st DCA Dec. 22, 2015). In its decision, the district court certified the same

question of great public importance that it previously certified in Moore v. State,

114 So. 3d 486, 493-94 (Fla. 1st DCA 2013):

> WHEN A DEFENDANT IS CONVICTED OF EITHER
> MANSLAUGHTER OR A GREATER OFFENSE NOT MORE
> THAN ONE STEP REMOVED, DOES THE FAILURE TO
> INSTRUCT THE JURY ON JUSTIFIABLE OR EXCUSABLE
> HOMICIDE CONSTITUTE FUNDAMENTAL ERROR NOT
> SUBJECT TO A HARMLESS ERROR ANALYSIS EVEN WHERE
> THE RECORD REFLECTS THERE WAS NO DISPUTE AS TO
> THIS ISSUE AND THERE WAS NO EVIDENCE PRESENTED

FROM WHICH THE JURY COULD FIND JUSTIFIABLE OR EXCUSABLE HOMICIDE?

Spencer, 40 Fla. L. Weekly at D2819.[1]  We have jurisdiction.  See art. V, § 3(b)(4), Fla. Const.  Because this was an attempted homicide case, as opposed to Moore, which involved a homicide, we rephrase the certified question as follows:

> WHERE THE RECORD REFLECTS THERE WAS NO EVIDENCE PRESENTED FROM WHICH A JURY COULD FIND JUSTIFIABLE OR EXCUSABLE ATTEMPTED HOMICIDE, DOES FUNDAMENTAL ERROR OCCUR WHEN THE TRIAL COURT FAILS TO INSTRUCT ON JUSTIFIABLE OR EXCUSABLE ATTEMPTED HOMICIDE, AND A DEFENDANT IS CONVICTED OF ATTEMPTED MANSLAUGHTER OR A GREATER OFFENSE NOT MORE THAN ONE STEP REMOVED?

For the reasons discussed below, we answer the rephrased certified question in the affirmative and approve the holding of the First District.

## FACTS AND PROCEDURAL HISTORY

Damani Spencer was convicted of two counts of attempted second-degree murder, attempted robbery, and carrying a concealed firearm.  See Spencer, 40 Fla. L. Weekly at D2819.  The facts were described by the First District Court of Appeal as follows:

> Appellant's convictions arose out of an attempted robbery during a drug transaction. . . . At the time of the incident, the . . . victims were seated in a vehicle.  They were approached by appellant and another man who attempted to rob them at gunpoint.  Appellant

---

1. We previously granted review of Moore, but ultimately discharged jurisdiction.  See State v. Moore, 181 So. 3d 1186, 1187 (Fla. 2016).

later gave a statement to police admitting that he was the man who walked up to the passenger side of the vehicle, pulled out a gun from his waistband, and demanded the drugs. As the victims drove away, appellant and the second man shot at their vehicle multiple times.

Id.

The First District affirmed Spencer's convictions for carrying a concealed firearm and attempted robbery but, similar to Moore, reversed the convictions for attempted second-degree murder because the trial court "failed to instruct that the appellant could not be guilty of attempted manslaughter if the attempted killings were either justifiable or excusable homicide." Id. Defense counsel neither requested this instruction nor objected to the instructions as given. See id. The First District determined that it was bound by this Court's decision in State v. Lucas, 645 So. 2d 425 (Fla. 1994), which held that the failure to instruct on justifiable or excusable homicide as part of the manslaughter instruction constitutes fundamental error where a defendant is convicted of manslaughter or an offense not more than one step removed, regardless of whether the evidence could support a finding of either. See id. at D2819. Concluding that nothing in the record supported justifiable or excusable attempted homicide, the First District certified the same question as in Moore to be of great public importance. See id.

## ANALYSIS

The rephrased certified question presents a legal question for which the standard of review is de novo. See Haygood v. State, 109 So. 3d 735, 739 (Fla.

2013).  The trial court below read the standard jury instruction on attempted

manslaughter by act with the exception of the underlined provisions:

ATTEMPTED MANSLAUGHTER BY ACT

§§ 782.07 and 777.04, Fla. Stat.

To prove the crime of Attempted Manslaughter by Act, the State must prove the following element beyond a reasonable doubt:

(Defendant) intentionally committed an act, which would have resulted in the death of (victim) except that someone prevented (defendant) from killing (victim) or he failed to do so.

However, the defendant cannot be guilty of Attempted Manslaughter by Act by committing a merely negligent act.

Each of us has a duty to act reasonably and use ordinary care toward others.  If there is a violation of that duty, without any conscious intention to harm, that violation is negligence.

It is not an attempt to commit manslaughter if the defendant abandoned the attempt to commit the offense or otherwise prevented its commission under circumstances indicating a complete and voluntary renunciation of his criminal purpose.

In order to convict of Attempted Manslaughter by Act it is not necessary for the State to prove that the defendant had an intent to cause death, only an intent to commit an act which would have caused death and was not justifiable or excusable attempted homicide, as I have previously explained those terms.

Fla. Std. Jury Instr. (Crim.) 6.6 (2014).  The trial court also did not instruct the jury

on justifiable or excusable attempted homicide.  Those instructions provide:

JUSTIFIABLE ATTEMPTED HOMICIDE

An attempted homicide is justifiable and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the attempted homicide.

EXCUSABLE ATTEMPTED HOMICIDE

An attempted homicide is excusable and therefore lawful under any one of the three following circumstances:

1. When the attempted homicide is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or
2. When the attempted homicide occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or
3. When the attempted homicide is committed by accident and misfortune resulting from a sudden combat, if a dangerous weapon is not used and the killing is not done in a cruel and unusual manner.

Fla. Std. Jury Instr. (Crim.) 6.1. As noted by the First District, defense counsel did not object to these omissions.

It is well established that "[j]ury instructions are 'subject to the contemporaneous objection rule, and absent an objection at trial, can be raised on appeal only if fundamental error occurred.' " State v. Weaver, 957 So. 2d 586, 588 (Fla. 2007) (quoting Reed v. State, 837 So. 2d 366, 370 (Fla. 2002)). Accordingly, Spencer is entitled to relief only if the giving of the incomplete attempted manslaughter by act instruction and the omission of the justifiable and excusable attempted homicide instructions constitute fundamental error:

To justify not imposing the contemporaneous objection rule, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown[ v. State], 124 So. 2d [481, 484 (Fla. 1960)]. In other words, "fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict." Stewart v. State, 420 So. 2d 862, 863

(Fla. 1982), cert. denied, 460 U.S. 1103, Stewart v. State, 420 So. 2d 862, 863 (Fla. 1982), cert. denied, 460 U.S. 1103 (1983).

State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991).

In Lucas, we addressed the same issue presented by the certified question here and held that fundamental error occurs when the trial court fails to explain justifiable and excusable homicide as part of the manslaughter instruction, and the defendant is convicted of manslaughter or an offense not more than one step removed, regardless of whether the evidence could support a finding of either justifiable or excusable homicide. See 645 So. 2d at 426-27. The First District in Lucas v. State, 630 So. 2d 597 (Fla. 1st DCA 1993), approved, 645 So. 2d 425 (Fla. 1994), stated that attempted manslaughter was not at issue because the defendant conceded an attempted second-degree murder had occurred. Id. at 598. The defense at trial was that the defendant was not the perpetrator. Id. In Lucas, we expressly declined to recede from longstanding precedent with regard to justifiable and excusable homicide and "reiterate[d] that the failure to give a complete initial instruction on manslaughter constitutes fundamental reversible error when the defendant is convicted of either manslaughter or a greater offense not more than one step removed." 645 So. 2d at 427.

The mandatory giving of instructions on justifiable and excusable homicide in manslaughter cases arises from the statutory definition of the crime. The manslaughter statute provides, in relevant part:

- 6 -

The killing of a human being by the act, procurement, or culpable negligence of another, <u>without lawful justification</u> according to the provisions of chapter 776 <u>and in cases in which such killing shall not be excusable homicide or murder</u>, according to the provisions of this chapter, is manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 782.07(1), Fla. Stat. (2016) (emphasis added). This Court has stated with regard to an earlier version of the statute:

One notes immediately that it is in the nature of a residual offense. If a homicide is either justifiable or excusable it cannot be manslaughter. Consequently, in any given situation, if an act results in a homicide that is either justifiable or excusable as defined by statute, a not guilty verdict necessarily ensues. The result is that in order to supply a complete definition of manslaughter as a degree of unlawful homicide it is necessary to include also a definition of the exclusions.

<u>Hedges v. State</u>, 172 So. 2d 824, 826 (Fla. 1965), <u>receded from on other grounds</u>, <u>Weiand v. State</u>, 732 So. 2d 1044 (Fla. 1999); <u>see also</u> <u>Phillipe v. State</u>, 795 So. 2d 173, 174 (Fla. 3d DCA 2001) ("The usual rule is that failure to give instructions and definitions of excusable and justifiable homicide in a murder or manslaughter case constitutes fundamental error because the trial court fails to advise the jury as to what constitutes lawful acts versus unlawful acts.").

Despite this requirement, <u>Lucas</u> recognized an exception to the one-step-removed fundamental error analysis—that is, where defense counsel affirmatively agreed to or requested an incomplete instruction. <u>See</u> 645 So. 2d at 427 (citing <u>Armstrong v. State</u>, 579 So. 2d 734 (Fla. 1991)). The district courts have held that the <u>Lucas</u>/<u>Armstrong</u> exception does not apply where defense counsel merely

- 7 -

acquiesced to jury instructions that did not provide a full instruction on justifiable or excusable homicide. See, e.g., Black v. State, 695 So. 2d 459, 461 (Fla. 1st DCA 1997) ("Before the exception recognized in Lucas can apply, defense counsel must be aware that an incorrect instruction is being read and must affirmatively agree to, or request, the incomplete instruction. These circumstances do not exist on the instant record."); Roberts v. State, 694 So. 2d 825, 826 (Fla. 2d DCA 1997) ("Since defense counsel did not affirmatively agree to the omission of the instructions, but only acquiesced in the instructions as given, the exception does not apply."); Ortiz v. State, 682 So. 2d 217, 217 (Fla. 5th DCA 1996) ("As we held in Blandon[ v. State, 657 So. 2d 1198 (Fla. 5th DCA 1995)], the mere failure to object to the omission of a justifiable homicide charge in an attempted murder case does not constitute the affirmative waiver discussed in Armstrong. It was the trial court's responsibility to see that the jury was properly instructed and that the definition of justifiable homicide was read.").

Having considered the arguments of the parties, we decline to recede from Lucas even where there is nothing in the evidence from which a jury could conclude that a homicide or an attempted homicide was excusable or justified. This is because justifiable and excusable homicide are always in dispute by virtue of the statutory definition of manslaughter. We have previously stated that, "[c]haracterized by what it is not, manslaughter is considered a residual offense."

State v. Montgomery, 39 So. 3d 252, 258 (Fla. 2010). Pursuant to section 782.07(1), the absence of justification and excuse is fundamental to the very definition of this crime. Accordingly, we reaffirm our holding in Lucas that the failure to instruct on justifiable or excusable homicide as a part of the instruction on manslaughter constitutes fundamental error where the conviction is for manslaughter or a greater offense not more than one step removed, regardless of whether the evidence could support either.

Despite the continued validity of Lucas, we nonetheless conclude that a second exception to its fundamental error rule is warranted where a defendant expressly concedes that a homicide or an attempted homicide is not justified or excusable. As noted by the State, we have previously determined that the failure to instruct on an undisputed element of an offense is not fundamental error, and there must be an objection to preserve the issue for appeal. See, e.g., Reed, 837 So. 2d at 369; Delva, 575 So. 2d at 645. We recently addressed whether the element of intent was undisputed such that the giving of an erroneous manslaughter by act jury instruction did not constitute fundamental error where the defendant was convicted of an offense not more than one step removed. See Griffin v. State, 160 So. 3d 63 (Fla. 2015).

In Griffin, the defendant was charged with second-degree murder. Id. at 65. The jury received an instruction on manslaughter consistent with that held to be

fundamentally erroneous in Montgomery, 39 So. 3d 252. 160 So. 3d at 66.

Although the Second District Court of Appeal concluded that the manslaughter

instruction was erroneous, it rejected the defendant's claim of fundamental error

because his sole defense was misidentification. Id. at 66-67. The district court

reasoned that because intent was not in dispute, the erroneous instruction on the

intent element of the lesser included offense of manslaughter did not constitute

fundamental error. Id. at 67.

We quashed the district court's decision and held that "a sole defense of

misidentification does not concede or fail to place in dispute intent or any other

element of the crime charged except identity when the offense charged is an

unlawful homicide." Id. We explained:

> Certainly, where a defendant expressly concedes one or more
> elements of a crime, those elements can be characterized as no longer
> in dispute for purposes of a fundamental error analysis. In the present
> case, other than the fact that [the victim] was shot, Griffin did not
> concede any other elements of the crime charged; he simply contested
> his identity as the perpetrator. The State's burden still remained to
> prove that the shooting was done with a depraved mind, but without
> intent to kill, as set forth in the standard jury instructions. Thus, we
> conclude that intent remained a matter that was pertinent or material
> to what the jury must consider in order to convict Griffin of the crime
> charged or a lesser included offense, notwithstanding his claim of
> misidentification.

Id. at 69 (citations omitted). Justifiable and excusable homicide were expressly

referenced as part of our analysis:

- 10 -

In this case, <u>once the jury determined that the homicide was not justifiable or excusable</u>, the intent underlying the unlawful homicide was pertinent or material to what the jury had to consider in order to convict Griffin of second-degree murder or the lesser offense of manslaughter by intentional act. Griffin's claim of misidentification did not concede the element of intent as to the shooting, and <u>he was entitled to an accurate instruction as to manslaughter</u>, which he did not receive.

<u>Id.</u> (emphasis added). Regardless of whether justifiable or excusable homicide are "elements" of the crime of manslaughter, based upon our reiteration in <u>Griffin</u> of the principle that a defendant may concede an element of a crime such that it is no longer in dispute for purposes of a fundamental error analysis, we conclude that an exception to <u>Lucas</u> should be recognized where a defendant expressly concedes that a homicide or an attempted homicide was neither justified nor excusable.

Here, the State played a video during trial in which Spencer stated that he and a codefendant attempted to rob the victims during a drug transaction. Spencer also admitted that he started shooting as the victims sped away in a vehicle. During closing statements, counsel admitted that a crime was committed, but asserted that the evidence "doesn't point to who committed it." Counsel contended that the State had not met its burden of proving beyond a reasonable doubt that Spencer was one of the individuals who shot at the victims. Instead, counsel during trial implied that Spencer's recorded statement was a product of his desire to gain "street credibility," described as "when someone gives you a false

confession because they want you to act like they're bigger and badder, so to speak than they are on the street."

As previously discussed, the justifiable and excusable attempted homicide instructions were not read to the jury, and counsel did not object to these omissions. Because Spencer did not affirmatively agree to or request the incomplete instruction on attempted manslaughter or the omission of the justifiable or excusable attempted homicide instructions, we conclude that the fundamental error exception in Lucas and Armstrong does not apply.

Further, Spencer did not expressly concede that the attempted homicides were neither justified nor excusable. During closing statements, the presence or absence of excusable or justifiable attempted homicide was not mentioned by defense counsel. Instead, he contended that the State had failed to sustain its burden of proof. Therefore, the exception to Lucas we recognize today is not applicable, and fundamental error occurred during Spencer's trial. As in Griffin, Spencer "was entitled to an accurate instruction as to manslaughter, which he did not receive." 160 So. 3d at 69.

**CONCLUSION**

In light of the foregoing, we answer the rephrased certified question in the affirmative, but reiterate that the Lucas/Armstrong exception to the fundamental error rule continues to apply in situations where defense counsel affirmatively

- 12 -

agreed to or requested an incomplete instruction. Further, we recede in part from Lucas to allow a second exception to the fundamental error rule where the defendant expressly conceded that the homicide or attempted homicide was not justified or excusable. However, because neither of these circumstances is applicable to Spencer, we approve the decision of the First District Court of Appeal reversing Spencer's convictions for attempted second-degree murder and remanding for a new trial on these counts.[2]

It is so ordered.

PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Once again, the jury pardon doctrine rears its ugly head. I would recede from State v. Lucas, 645 So. 2d 425 (Fla. 1994)—a flawed opinion rooted in the inherent lawlessness of the jury pardon doctrine. I therefore dissent from the decision here, which relies on Lucas.

---

2. Because convictions are being reversed on the basis of fundamental error due to the giving of incomplete jury instructions, we refer to the Supreme Court Committee on Standard Jury Instructions in Criminal Cases the matter of whether the standard jury instructions should be clarified in light of this decision.

Fundamental error did not occur in this case: there is no logical way to conclude that the defendant's conviction for attempted second-degree murder occurred because of the trial court's incomplete jury instruction on the lesser included offense of attempted manslaughter. The majority orders a new trial simply because the trial judge did not instruct the jury as to a matter, for which there was no evidentiary basis, regarding a lesser included offense. Instead of actively facilitating the possibility of jury lawlessness by ordering a new trial, I would answer the certified question in the negative, quash the district court's decision, and leave the lawful conviction undisturbed. Ordering a new trial damages the rule of law.

This Court has previously called into question the jury pardon doctrine without affirmatively repudiating it. See Sanders v. State, 946 So. 2d 953 (Fla. 2006). In Sanders, despite noting that the jury pardon doctrine had "become a recognized part of the [criminal legal] system" in Florida, id. at 959, this Court held that "[t]he possibility of a jury pardon cannot form the basis for a finding of prejudice" in postconviction claims for relief based on alleged ineffective assistance of counsel, id. at 960. As I have previously explained, this Court should repudiate the jury pardon doctrine because it "is inconsistent with the pertinent rule of criminal procedure, embeds contradiction in the jury instruction process, encourages irrational jury verdicts, and is corrosive of the rule of law." Haygood

v. State, 109 So. 3d 735, 746 (Fla. 2013) (Canady, J., dissenting); see also State v. Wimberly, 498 So. 2d 929, 932-35 (Fla. 1986) (Shaw, J., dissenting).  But at a bare minimum, I believe this Court should recede from Lucas and extend this Court's reasoning in Sanders to the instant case—a case in which the defendant failed to object to an incomplete jury instruction on attempted manslaughter, the incomplete instruction involved a matter for which there was no evidentiary basis, the defendant was convicted of attempted second-degree murder, and attempted second-degree murder was proven beyond a reasonable doubt.

After briefly examining the jury pardon doctrine, I explain why the reasoning of Sanders should be applied to the instant case.  I then explain how the majority's adherence to Lucas ignores the actual test for fundamental error and produces a nonsensical result.  Finally, I explain why the majority's new Lucas "exception" should apply to this case.

## I.  The Jury Pardon Doctrine

Lucas and the instant case are premised on Florida's jury pardon doctrine and the notion that a defendant has the fundamental right to be instructed on certain lesser included offenses.  As this Court has explained, under Florida's jury pardon doctrine, "[a] jury must be given a fair opportunity to exercise its inherent 'pardon' power by returning a verdict of guilty as to the next lower crime."  State v. Montgomery, 39 So. 3d 252, 259 (Fla. 2010) (quoting Pena v. State, 901 So. 2d

- 15 -

781, 787 (Fla. 2005)); see also Wimberly, 498 So. 2d at 932 ("The requirement that a trial judge must give a requested instruction on a necessarily lesser included offense is bottomed upon a recognition of the jury's right to exercise its 'pardon power.' " (citing State v. Baker, 456 So. 2d 419, 422 (Fla. 1984))).

Contrary to this Court's jurisprudence, the United States Supreme Court has never recognized a defendant's fundamental right to be instructed on one-step-removed necessarily lesser included offenses. See, e.g., Hopper v. Evans, 456 U.S. 605, 611-12 (1982) ("[D]ue process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction. . . . The federal rule is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.' ") (third alteration in original) (quoting Keeble v. United States, 412 U.S. 205, 208 (1973)). Indeed, the Supreme Court concluded in Hopper that "[a]n instruction on the offense of unintentional killing" was unwarranted in a case in which "[t]he evidence not only supported the claim that [the defendant] intended to kill the victim, but affirmatively negated any claim that he did not intend to kill the victim." Id. at 613.

Instead of embracing Florida's jury pardon doctrine—as the majority does by ordering a new trial—this Court should follow the Supreme Court's lead. As

- 16 -

explained below, applying the reasoning of <u>Sanders</u> to this case would be a sensible first step in that direction.

## II. The Reasoning of <u>Sanders</u> Should Apply to this Case

<u>Sanders</u> was a postconviction case, but this Court's reasoning in <u>Sanders</u> should nevertheless be extended to the instant case. <u>Sanders</u> addressed two consolidated cases involving postconviction claims of ineffective assistance of counsel—<u>Sanders v. State</u>, 847 So. 2d 504 (Fla. 1st DCA 2003), and <u>Willis v. State</u>, 840 So. 2d 1135 (Fla. 4th DCA 2003). In both cases, the defendants were charged with robbery with a firearm. <u>Sanders</u>, 946 So. 2d at 955. Each trial court instructed the jury on the charged offense and on certain permissive and necessarily included lesser offenses but failed to instruct the jury on the category-one necessarily lesser included offense of robbery with a weapon. <u>Id.</u> Defense counsel neither requested the omitted instruction nor objected to the trial court's failure to read the instruction. <u>Id.</u> Both defendants were convicted of the charged offense and later brought postconviction claims for relief alleging ineffective assistance of counsel based on defense counsel failing to request the omitted instruction. <u>Id.</u> The trial courts summarily dismissed the respective motions for relief, and the defendants appealed—Sanders to the First District Court of Appeal, and Willis to the Fourth District Court of Appeal. <u>Id.</u>

The First District upheld the trial court's summary denial of Sanders' motion, holding that counsel's failure to request the instruction "does not create a reasonable probability that the jury, given the opportunity, would have returned a guilty verdict only as to the lesser offense." Id. (citing Sanders, 847 So. 2d at 508). Conversely, the Fourth District reversed the trial court's summary dismissal of Willis's motion, holding that counsel's failure to request the instruction was "a legally sufficient ground to support an ineffective assistance of counsel claim." Id. (quoting Willis, 840 So. 2d at 1136). The Fourth District then certified conflict with the First District's decision. Id.

On review, this Court held that the trial courts properly denied the defendants' claims because the defendants failed to prove ineffective assistance under the Supreme Court's Strickland[3] test which requires a defendant to prove the following two elements: (1) deficient performance by counsel; and (2) that the deficient performance prejudiced the defense. Sanders, 946 So. 2d at 956 (citing Strickland, 466 U.S. at 687). After acknowledging that a defense counsel's failure to request an instruction on a necessarily included lesser offense likely satisfies the first Strickland prong, id. at 959, this Court primarily focused on the second Strickland prong—the "prejudice" prong—under which a defendant must show "a

---

3. Strickland v. Washington, 466 U.S. 668 (1984).

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 956 (quoting Strickland, 466 U.S. at 694). In other words, "[a]s the Supreme Court has warned, to demonstrate prejudice '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' Rather, 'the defendant must show that they actually had an adverse effect on the defense.' " Id. at 956 (second alteration in original) (citation omitted) (quoting Strickland, 466 U.S. at 693).

In reaching its conclusion, this Court went through a lengthy examination of the jury pardon doctrine, noting its numerous inherent flaws. Namely, despite recognizing that the jury pardon doctrine had "become a recognized part of the [criminal legal] system" in Florida, id. at 959, this Court described jury pardons as having a "suspect pedigree," id., and as being "without legal foundation," id. at 958. This Court also noted that "[b]y definition, jury pardons violate the oath jurors must take before trial, as well as the instructions the trial court gives them." Id. This Court described those violations as follows:

> Although the jury also is instructed about lesser-included offenses, the instruction specifically allows the jury to consider a lesser-included offense only if it "decide[s] that the main accusation has not been proved beyond a reasonable doubt." Fla. Std. Jury Instr. (Crim.) 3.4. The United States Supreme Court restates these instructions as a simple duty: "Jurors . . . take an oath to follow the law as charged, and they are expected to follow it." United States v. Powell, 469 U.S. 57, 66 (1984) (citing Adams v. Texas, 448 U.S. 38 (1980)).

Id. (alterations in original).

Sanders eventually held that as a matter of law, "[t]he possibility of a jury pardon cannot form the basis for a finding of prejudice." Id. at 960. In so holding, Sanders repeatedly noted that the defendants had not raised any issues which called into question the juries' findings of guilt beyond a reasonable doubt as to the charged crimes. Id. at 957, 960.

Although Sanders involved a claim for postconviction relief as opposed to a direct appeal, the reasoning of Sanders regarding prejudice is irreconcilable with the majority's conclusion that fundamental error occurred in this case. For the same reason that Sanders concluded that prejudice could not be established, fundamental error cannot be established in this case.

Sanders itself drew a distinction between postconviction motions and direct appeals:

> As the First District noted below, "the test for prejudicial error in conjunction with a direct appeal is very different from the test for prejudice in conjunction with a collateral claim of ineffective assistance." Sanders, 847 So. 2d at 506 (quoting Hill[ v. State], 788 So. 2d [315,] 318 [(Fla. 1st DCA 2001)]). "These differences clearly make reversal on direct appeal for the trial court's failure to give an instruction on a requested lesser included offense logical, and relief granted in collateral proceedings for trial counsel's failure to request such an instruction illogical." Vickery[ v. State], 869 So. 2d [623,] 626 [(Fla. 5th DCA 2004)] (Sawaya, C.J., concurring specially).

Id. at 959. But an examination of the context of the cited quotation from Hill reveals why such a distinction is not relevant here:

- 20 -

[T]he test for prejudice on direct appeal is the harmless error test of Chapman v. California, 386 U.S. 18 (1967), under which trial court error will result in reversal unless the prosecution can prove "beyond a reasonable doubt" that the error did not contribute to the verdict obtained. Conversely, however, as explained in Strickland, prejudice may be found in a collateral proceeding in which ineffective assistance of counsel is claimed only upon a showing by the defendant that there is a "reasonable probability" that counsel's deficient performance affected the outcome of the proceeding.

Hill, 788 So. 2d at 318-19. There is a great gulf between the direct appeal harmless error standard and the postconviction prejudice standard. And there is no less a gulf between harmless error and fundamental error.

In the instant case, the defendant did not object to the incomplete attempted manslaughter instruction. Thus, the test here is not the harmless error standard referenced in Hill. Rather, the proper test is whether fundamental error occurred. See majority op. at 5 (quoting State v. Weaver, 957 So. 2d 586, 588 (Fla. 2007) (quoting Reed v. State, 837 So. 2d 366, 370 (Fla. 2002))). "Fundamental error is that which 'reaches down into the validity of the trial itself to the extent that a verdict . . . could not have been obtained without [that] error.' " Floyd v. State, 850 So. 2d 383, 403 (Fla. 2002) (alterations in original) (quoting Archer v. State, 673 So. 2d 17, 20 (Fla. 1996)).

This Court has described the fundamental error standard as an "exacting standard" under which, in order "for error to meet this standard, it must follow that the error prejudiced the defendant." Reed, 837 So. 2d at 370 (emphasis added).

Given the "exacting" fundamental error standard involved, the distinction in Sanders between direct appeal (harmless error) and postconviction relief (actual prejudice) is not applicable here. This Court has repeatedly held that the fundamental error standard is no less exacting than the Strickland prejudice standard. See, e.g., Wright v. State, 42 Fla. L. Weekly S343, S353, 2017 WL 1064515, at *22 (Fla. Mar. 16, 2017) ("Despite the distinctions between the fundamental error standard and the Strickland prejudice standard, this Court has held that a previous finding upon appeal that statements by a prosecutor failed to rise to fundamental error precludes a determination of prejudice in the Strickland context."); Hayward v. State, 183 So. 3d 286, 327 (Fla. 2015) ("If the issue is not preserved by trial counsel, appellate counsel is only deficient in failing to assert it on appeal if it is fundamental error . . . ."); Lowe v. State, 2 So. 3d 21, 38 (Fla. 2008) ("Because the Court found no fundamental error, Lowe fails to demonstrate that counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the trial under Strickland."); Chandler v. State, 848 So. 2d 1031, 1046 (Fla. 2003) ("Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the Strickland test.").

If an error that is not fundamental cannot be prejudicial under the Strickland standard, the converse is also true.  After all, Strickland prejudice requires the showing of "a reasonable probability that . . . the result of the proceeding would have been different," Sanders, 946 So. 2d at 956 (emphasis added) (quoting Strickland, 466 U.S. at 694), whereas fundamental error requires a showing that the "verdict . . . could not have been obtained without [that] error,' " Floyd, 850 So. 2d at 403 (alterations in original) (emphasis added) (quoting Archer, 673 So. 2d at 20).

Here, the majority offers no explanation of how the defendant was prejudiced or how the result logically could have been different if the jury had been instructed on justifiable and excusable attempted homicide.  Rather, the majority's ordering of a new trial is premised on the notion that the incomplete instruction could have "had some conceivable effect on the outcome of the proceeding."  Sanders, 946 So. 2d at 956 (quoting Strickland, 466 U.S. at 693).  Sanders establishes that such a notion is insufficient to show prejudice under Strickland.  Under the reasoning of Sanders, such a notion should similarly be insufficient to show prejudice under the "exacting" fundamental error standard.  Consequently, the reasoning of Sanders should be applied to this case—namely, that a showing of prejudice cannot be based "on the possibility of a jury pardon, which by definition assumes that the jury would have disregarded the law, the trial

court's instructions, and the evidence presented." Id. As explained below, the majority's failure to adopt the reasoning of Sanders grossly distorts our fundamental error doctrine and produces a nonsensical result.

### III. The Majority's Adherence to Lucas Ignores the Actual Test for Fundamental Error and Produces a Nonsensical Result

In concluding that fundamental error occurred, the majority cites the proper test to be employed in determining fundamental error and then inexplicably fails to perform an analysis under that test. Not surprisingly, an analysis under that test results in an affirmance of the conviction below.

The majority notes the test for determining fundamental error as follows:

> To justify not imposing the contemporaneous objection rule, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown[ v. State], 124 So. 2d [481, 484 (Fla. 1960)]. In other words, "fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict." Stewart v. State, 420 So. 2d 862, 863 (Fla. 1982), cert. denied, 460 U.S. 1103 (1983).

Majority op. at 5-6 (alterations in original) (quoting State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991)). The majority then offers no explanation of how the defendant's conviction for attempted second-degree murder "could not have been obtained without the assistance of [the incomplete instruction as to attempted manslaughter]." Brown, 124 So. 2d at 484. Instead, the majority simply reasons that manslaughter cannot be defined without an explanation of justifiable and

- 24 -

excusable homicide and concludes that "justifiable and excusable homicide are always in dispute by virtue of the statutory definition of manslaughter." Majority op. at 8. Thus, fundamental error is determined to have occurred here because attempted second-degree murder is "not more than one step removed" from attempted manslaughter. In other words, the majority simply relies on Lucas.

The majority's unarticulated explanation for finding fundamental error, of course, is that the jury somehow might have otherwise exercised its inherent jury pardon power had the complete attempted manslaughter instruction been read. But such an explanation ignores the test for fundamental error and is untethered from the evidence, which negates a conclusion of justifiable or excusable attempted homicide.

While purporting to apply our traditional fundamental error test, the majority effectively applies a "structural" error standard—akin to the per se reversible error analysis applied by this Court's majority in Johnson v. State, 53 So. 3d 1003 (Fla. 2010). In Johnson, this Court's majority found that per se reversible error occurred where defense counsel timely objected to a trial court's erroneous instruction to the jury that there would be no reading back of any testimony. The rationale underpinning the majority's decision in Johnson was that it was "impossible to determine the effect of the erroneous instruction on the jury without engaging in

speculation." Id. at 1005. Indeed, the Johnson majority justified the use of the per

se reversible error standard in that case by relying on a jury pardon example:

> Another circumstance in which this Court has held that an error is per se reversible because the reviewing court cannot conduct a harmless error analysis is when a jury is not instructed on a lesser-included offense one step removed from the charged offense. In such a situation, the reviewing court cannot determine the effect of the error on the jury because the court cannot know whether the jury would have convicted the defendant of the next lesser included offense if the jury had been given the option. As explained by this Court: "If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense." Pena v. State, 901 So. 2d 781, 787 (Fla. 2005) (citing State v. Abreau, 363 So. 2d 1063 (Fla. 1978)). To conduct a harmless error analysis in that situation would be to engage in pure speculation.

Johnson, 53 So. 3d at 1008. The Johnson majority's rationale is the same rationale

underpinning the majority's decision in this case. And yet in this case the only

possible issue upon which to "speculat[e]," id., is whether the jury would have

ignored the evidence and issued an unlawful jury pardon.

Of course, the hallmark of structural error is a "defect[] in the constitution of

the trial mechanism." Arizona v. Fulminante, 499 U.S. 279, 309 (1991). The

Supreme Court has made clear that there are very few categories of errors which

constitute structural error. See United States v. Davila, 133 S. Ct. 2139, 2149

(2013) ("Errors of this kind include denial of counsel of choice, denial of self-

representation, denial of a public trial, and failure to convey to a jury that guilt

must be proved beyond a reasonable doubt."); United States v. Marcus, 560 U.S.

- 26 -

258, 263 (2010) (" '[S]tructural errors' are 'a very limited class' of errors . . . ."); United States v. Dominguez Benitez, 542 U.S. 74, 81 (2004) ("It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding."). Here, the incomplete attempted manslaughter instruction undoubtedly does not fall within the Supreme Court's limited class of structural errors. See Neder v. United States, 527 U.S. 1, 8 (1999) ("The error at issue here—a jury instruction that omits an element of the offense—differs markedly from the constitutional violations we have found to defy harmless-error review.").

Ultimately, the majority's finding of fundamental error rests on nothing more than the possibility of a lawless decision by the jury. Failing to perfectly facilitate a lawless result is neither a "defect[] in the constitution of the trial mechanism," Fulminante, 499 U.S. at 309, nor an error that "reach[es] down into the validity of the trial itself," Brown, 124 So. 2d at 484. Consequently, the majority's finding cannot be reconciled with either the structural error standard or this Court's traditional fundamental error test—as properly applied.[4]

---

4. Even if it is accepted that the "right" to a jury pardon should be facilitated and preserved, it is absurd to believe that a jury determined to produce such a lawless result would have been in the slightest bit impeded by the totally irrelevant imperfection in the jury instruction here. There is no line of reasoning that can support such a conclusion.

The majority's distortion of our fundamental error doctrine thus ends up producing a nonsensical result. On the one hand, as a matter of law, a defendant is unable to rely on the possibility of a jury pardon to show prejudice under Strickland in a case in which a requisite lesser included offense instruction was never even read to the jury. See Sanders, 946 So. 2d 953. Yet on the other hand, a defendant somehow is able to rely on the possibility of a jury pardon to show prejudice under the "exacting" fundamental error standard in a case in which the requisite lesser included offense instruction was read to the jury—except for a portion relating to a matter for which there was no evidentiary basis. That sort of illogical outcome can only flow from adherence to bad precedent. It vividly illustrates the jurisprudential chaos that results from adherence to the jury pardon doctrine. The actual test for fundamental error requires that the conviction below be left undisturbed, because the "validity of the trial" was not compromised and there is no way to conclude that the defendant's conviction for attempted second-degree murder occurred because of the trial court's incomplete jury instruction for the lesser included offense of attempted manslaughter. See Delva, 575 So. 2d at 644-45.

**IV. The Majority's New Lucas "Exception" Should Apply to this Case**

The majority recognizes a second exception to Lucas—namely, "where a defendant expressly concedes that a homicide or an attempted homicide was

- 28 -

neither justified nor excusable." Majority op. at 11. In support of this new exception, the majority notes this Court's previous determination "that the failure to instruct on an undisputed element of an offense is not fundamental error, and there must be an objection to preserve the issue for appeal." Majority op. at 9 (citing Reed, 837 So. 2d at 369; Delva, 575 So. 2d at 645). The majority also notes this Court's recent reiteration of that principle in Griffin v. State, 160 So. 3d 63, 69 (Fla. 2015). Majority op. at 11. After recognizing this new Lucas exception, the majority then declines to extend its application to the instant case, relying in large part on Griffin.

Griffin involved a homicide case in which the defendant was charged with second-degree murder and asserted the sole defense of misidentification. Griffin, 160 So. 3d at 65. At trial, the trial court properly instructed the jury on second-degree murder. Id. at 66. The trial court also instructed the jury on manslaughter, but the manslaughter instruction was the same standard jury instruction which this Court had previously determined to be fundamentally erroneous in certain instances, because the instruction implied an intent-to-kill element for manslaughter, even though no such element is present in manslaughter—or even in second-degree murder, for that matter. Id.; see also Montgomery, 39 So. 3d at 254-60. The defendant did not object to the manslaughter instruction. Griffin, 160 So. 3d at 66. The defendant was convicted of second-degree murder and appealed

on the basis that the erroneous manslaughter instruction constituted fundamental error. Id. The Second District affirmed the conviction, finding that by relying on the defense of misidentification, the defendant failed to dispute any of the elements of the offense, including intent. Id. This Court quashed the Second District's decision and remanded for a new trial, concluding that the defendant's sole defense of misidentification "did not concede the element of intent as to the shooting," id. at 69, and that the jury still was required to determine "the issue of 'intent'—either ill will, hatred, spite, or evil intent as is embodied in the depraved mind element of second-degree murder or the lack of any intent to kill as in the offense of manslaughter," id. at 70.

The rationale underlying Griffin simply does not apply here. Griffin involved a jury instruction that erroneously implied that intent to kill was a requisite element of manslaughter. Thus, irrespective of whether the defendant claimed misidentification, the instruction itself was problematic because it misstated the law and suggested a higher degree of intent was required for manslaughter than for second-degree murder. Here, the manslaughter instruction properly explained that manslaughter only requires an intent to commit an act which results in death. The imperfection in the instruction in this case involves solely whether the attempted homicide was justifiable or excusable—that is, whether the conduct was criminal or lawful. Indeed, Griffin itself clearly

- 30 -

distinguished the issue of intent from the issue of justifiable or excusable homicide: "[O]nce the jury determined that the homicide was not justifiable or excusable, the intent underlying the unlawful homicide was pertinent or material to what the jury had to consider in order to convict Griffin of second-degree murder or the lesser offense of manslaughter by intentional act." Id. at 69.

The majority concludes that Spencer did not "expressly concede" that the "attempted homicide was neither justified nor excusable," explaining as follows: "During closing statements, counsel admitted that a crime was committed, but asserted that the evidence 'doesn't point to who committed it.' " Majority op. at 11. The majority goes on to note that Spencer argued that his recorded statement—in which he previously admitted to committing the shooting—was a false confession and the "product of his desire to gain 'street credibility.' " Id. In other words, the newly recognized exception is somehow not applicable because although Spencer's counsel admitted that a crime was committed, he claimed that the evidence did not point to Spencer as the perpetrator. As an initial matter, it is unclear how Spencer's recorded statement—or, more specifically, his backpedaling therefrom—has any relevance to the issue of excusable or justifiable attempted homicide. Moreover, the majority references Spencer's counsel's closing statements but fails to provide a complete picture of those statements.

- 31 -

During closing arguments, counsel <u>repeatedly</u> conceded that a crime had been committed:

> [A]nd make no mistake, there are victims. . . . They have proven a case that two people were shot. They have proven that. Beyond a reasonable doubt, no question, they have proven that. . . . They have proven that they have a .45 caliber weapon here that was used in that crime. . . . [E]verything you have here . . . points to a crime being committed. It doesn't point to who committed it. . . . The question is has the State of Florida proven its case beyond a reasonable doubt that Damani Spencer did this? Or have they just proven that someone did this? And that's the question.

Spencer's sole defense was that he did not commit the crime—a crime that was proven beyond a reasonable doubt by the State. Nothing even remotely implicates justifiable or excusable attempted homicide. In an attempt to explain this away, the majority refers to the special nature of manslaughter as a residual offense: "[J]ustifiable and excusable homicide are always in dispute by virtue of the statutory definition of manslaughter. We have previously stated that, '[c]haracterized by what it is not, manslaughter is considered a residual offense.' " Majority op. at 8-9 (second alteration in original) (quoting <u>Montgomery</u>, 39 So. 3d at 258). But the majority overlooks that this Court has described justifiable and excusable homicide as "defenses" to the crime of manslaughter. <u>See, e.g.</u>, <u>Miller v. State</u>, 573 So. 2d 337, 337 (Fla. 1991). Indeed, justifiable and excusable homicide are defenses to <u>any</u> charge of unlawful homicide, including second-degree murder. As this Court recognized in <u>Griffin</u>, "[a] homicide found to be

unlawful is not automatically just one offense, but will be one of several possible homicide offenses depending upon the nature of the intent or the lack of any intent at the time of the homicide." Griffin, 160 So. 3d at 68.

By repeatedly conceding that a "crime" was proven by the State, Spencer's counsel "expressly concede[d]" that the conduct at issue was unlawful—that is, that it was neither justifiable nor excusable. Majority op. at 11. This concession by counsel, however, did not otherwise obviate the State's burden of having to prove the "degree of the offense based upon the intent." Griffin, 160 So. 3d at 68 (emphasis added). Indeed, despite counsel's repeated concessions, the State was still required to prove the depraved mind element of attempted second-degree murder. And the State did exactly that—beyond a reasonable doubt.

How the majority's new Lucas exception does not apply to this case is a mystery.

## V. Conclusion

Lucas and the instant case represent this Court's most extreme application of the jury pardon doctrine. Fundamental error is determined to have occurred and a new trial is ordered because of an unobjected-to incomplete instruction on a lesser offense, even though: (1) the omitted portion of the instruction on the lesser offense involved a matter for which there was no evidentiary basis; (2) there was no error with the instruction on the charged offense; (3) the jury convicted as to the

- 33 -

charged offense; (4) the State proved the charged offense beyond a reasonable doubt; and (5) conviction of the lesser offense could only result from a willful defiance of the instruction properly given to the jury. To describe this is to discredit it. We should recede from Lucas and pave the way for abrogating the jury pardon doctrine entirely. I dissent.

POLSTON and LAWSON, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

     First District - Case No. 1D14-5663

     (Leon County)

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Michael Schaub, Assistant Attorney General, Tallahassee, Florida,

     for Petitioner

Baya Harrison, III, Monticello, Florida,

     for Respondent