847 So.2d 504 (2003)
Robert Lavon SANDERS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-5033.
District Court of Appeal of Florida, First District.
March 31, 2003.
*505 Appellant, pro se.
Robert A. Butterworth, Attorney General, and James W. Rogers, Senior Assistant Attorney General, Tallahassee, for Appellee.
EN BANC
PER CURIAM.
In order to accommodate Judge Ervin's desire to revise his separate opinion, the court withdraws its opinion of November 15, 2002, and reissues its original opinion with the revised separate opinion. No motion for rehearing will be entertained.
Asserting three grounds for reversal, Sanders appeals the summary denial of his rule 3.850 motion for postconviction relief. We affirm the order under review and find it necessary to address only one of the appellant's arguments, his argument that the trial court erred in summarily denying his claim that his trial counsel rendered ineffective assistance by failing to request a jury instruction as to a one-step-removed lesser included offense of one of the crimes of which he was convicted. We consider this case en banc to recede from a line of authority holding that such a claim is a colorable claim under rule 3.850.
As recently explained in Hill v. State, 788 So.2d 315 (Fla. 1st DCA 2001), review denied, 807 So.2d 655 (Fla.2002), many decisions from this and other district courts of appeal hold that a defendant states a colorable basis for relief under rule 3.850 when he asserts that his trial counsel incompetently failed to request an instruction as to a one-step-removed lesser included offense of the crime of which the defendant has been convicted. The first of these decisions was Bateson v. State, 516 So.2d 280 (Fla. 1st DCA 1987), decided just three years after the seminal decision on ineffective assistance of counsel, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although Bateson makes no reference to Strickland, we assume that the Bateson panel was aware of the Strickland decision. However, it must be acknowledged that the precise contours of the holding in Strickland are much more clearly defined *506 now than they were just three years after Strickland was decided.
We are confronted in the present case with an issue materially indistinguishable from the issue presented in Bateson, but the knowledge gained from eighteen years of experience in applying Strickland to postconviction ineffective assistance of counsel claims persuades us that Bateson was wrongly decided. We are now convinced that the type of claim involved in Bateson, in Hill, and in the present case cannot satisfy the prejudice prong of Strickland. Our reasons for this conclusion were expressed in Hill as follows:
A valid claim of ineffective assistance of counsel is presented when a defendant shows (1) that the acts or omissions of counsel fell below the standard of reasonably effective assistance, and (2) that there is a "reasonable probability" that, but for counsel's ineffectiveness, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
* * *
Although the decisional law from the district courts, beginning with the decision in Bateson, indicates that the prejudice prong of the Strickland test may be satisfied in the circumstances presented here, we confess our inability fully to embrace the rationale for these decisions. Strickland indicates that prejudice will exist in conjunction with an ineffective assistance of counsel claim only where it can be said that there is a "reasonable probability" that counsel's deficient performance affected the outcome of the proceeding. But Bateson seems to address the question of prejudice from a very different perspective. It contains no discussion of whether there is a reasonable probability that, given the opportunity, the jury would have declined to follow the law and granted Bateson a jury pardon. Instead, the Bateson court concluded that prejudice could be found because it was "conceivable" that defense counsel's failure to request a jury instruction as to the lesser included offenses had deprived the appellant of the "possibility" of a jury pardon. Subsequent decisions have not articulated any other rationale for a finding of prejudice in these circumstances.
When a trial court improperly denies a defense request for an instruction as to a lesser included offense, the trial court commits error which may be corrected on direct appeal.... But the appellant's motion in the present case was not offered in conjunction with a direct appeal. It was offered in the context of a collateral proceeding. Significantly, the test for prejudicial error in conjunction with a direct appeal is very different from the test for prejudice in conjunction with a collateral claim of ineffective assistance. There are different tests because, once a conviction becomes final, a presumption of finality attaches to the conviction. See Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); Goodwin v. State, 751 So.2d 537, 546 (Fla.1999). Thus, as Goodwin explains, the test for prejudice on direct appeal is the harmless error test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), under which trial court error will result in reversal unless the prosecution can prove "beyond a reasonable doubt" that the error did not contribute to the verdict obtained. Conversely, however, as explained in *507 Strickland, prejudice may be found in a collateral proceeding in which ineffective assistance of counsel is claimed only upon a showing by the defendant that there is a "reasonable probability" that counsel's deficient performance affected the outcome of the proceeding.
It is entirely reasonable that the Chapman test is not satisfied where a trial court has improperly failed to honor a defense request for an instruction on a lesser included offense. Because we know that jury pardons are occasionally awarded by aberrant juries, it would be difficult for an appellate court to conclude beyond a reasonable doubt that a jury in a particular case, given the opportunity, would not disobey the law and grant a pardon. And if a trial court's refusal to grant a defense request for an instruction as to an applicable lesser included offense were considered harmless upon a finding of guilt as to the greater offense, there would be no remedy for a trial court's failure to comply with the law relating to the giving of instructions for lesser included offenses. A finding of prejudice in the direct appeal context is therefore appropriate both as a proper application of the Chapman test and as a necessary enforcement mechanism.
But these considerations do not apply in the context of a collateral proceeding in which ineffective assistance of counsel is claimed for failure to request an instruction as to a lesser included offense. In this content, there has been no trial court error. And, although it is "conceivable" that a jury in a given case might decline to follow the law and grant a jury pardon, this does not seem to us a reasonable probability. We recognize that a finding of reasonable probability under Strickland does not require a finding that it is more likely than not that the deficient performance of counsel affected the outcome of the proceeding. It requires only a finding that the deficient performance put the whole case in such a different light as to undermine the court's confidence in the outcome of the proceeding. See, e.g., Robinson v. State, 770 So.2d 1167, 1171-73 (Fla.2000)(Anstead, J., specially concurring). But we have difficulty accepting the proposition that there is even a substantial possibility that a jury which has found every element of an offense proved beyond a reasonable doubt, would have, given the opportunity, ignored its own findings of fact and the trial court's instructions on the law and found a defendant guilty of only a lesser included offense. In fact, we confess some discomfort with the proposition that members of the judiciary should even engage in such speculation. And we believe our reservations find support in the reasoning employed by the supreme court in Gragg v. State, 429 So.2d 1204 (Fla.1983).
Gragg was charged with aggravated battery by use of a firearm, aggravated assault by use of a firearm, and possession of a firearm by a convicted felon. The possession of a firearm count was severed, and Gragg proceeded to trial on the other two charges. At the conclusion of the evidence, the jury was properly instructed that it could not return a verdict of guilty as charged unless it found that Gragg had used a firearm to commit the offenses. The jury returned verdicts of guilty of the lesser included offenses of simple battery and simple assault. Claiming that the jury's verdicts collaterally estopped the prosecution from asserting that he had possessed a firearm in conjunction with the remaining charge of possession of a firearm by a convicted felon, Gragg moved *508 for, and was granted, a dismissal of that charge.
The supreme court ultimately concluded that the trial court had properly applied the rule of collateral estoppel (a component of the Fifth Amendment guarantee against double jeopardy) in dismissing the possession of a firearm charge. The supreme court noted that where a previous judgment of acquittal was based upon a general verdict, the rule of collateral estoppel requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Id. at 1206 (quoting Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) emphasis supplied). Responding to an argument by the state that the verdicts in Gragg's trial on the charges of aggravated battery and aggravated assault might have been the product of a jury pardon, the supreme court held that "courts should not speculate on whether the jury has reached its verdict through compassion or compromise." Id. Instead, a court "should limit its inquiry to whether there was a factual basis, rather than an emotional basis, upon which the jury's verdict could have rested." Id. at 1207. The supreme court therefore held, at least in the context of a collateral estoppel analysis, that courts may not assume that "rational" juries ignore the instructions given them by trial judges and pardon defendants.

Gragg does not, however, address whether courts should, in other contexts, engage in speculation that a jury might act in a manner that is not rational. The question presented by the present case may be expressed as follows:
IN CONDUCTING A PREJUDICE ANALYSIS PURSUANT TO A POSTCONVICTION STRICKLAND V. WASHINGTON INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM, MAY A COURT FIND A "REASONABLE PROBABILITY" THAT, HAD THE JURY BEEN GIVEN THE OPPORTUNITY TO RETURN A VERDICT OF GUILTY OF ONLY A LESSER INCLUDED OFFENSE, THE JURY WOULD HAVE DONE SO, THUS IGNORING ITS OWN FINDINGS OF FACT AND THE TRIAL COURT'S INSTRUCTIONS ON THE LAW?
Because speculation by a trial court in this context seems to us no less questionable than the speculation condemned by the supreme court in Gragg, and because this is a recurring issue in the courts of this state, we certify the foregoing question to the supreme court as a question of great public importance.
Hill at 317-320.
Although the supreme court denied review in Hill, and consequently did not answer the question certified therein, we are now satisfied that a proper application of Strickland mandates a negative answer to the question. The order under review is accordingly affirmed. We recede from Bateson, Hill, McClendon v. State, 765 So.2d 247 (Fla. 1st DCA 2000), Critton v. State, 668 So.2d 242 (Fla. 1st DCA 1996), and Kennedy v. State, 637 So.2d 987 (Fla. 1st DCA 1994). We also certify conflict with decisions such as Peffley v. State, 766 So.2d 418 (Fla. 4th DCA 2000), Oehling v. State, 659 So.2d 1226 (Fla. 5th DCA 1995), and Newton v. State, 527 So.2d 876 (Fla. 2d DCA 1988).
AFFIRMED.
*509 ALLEN, C.J., BOOTH, BARFIELD, WOLF, KAHN, WEBSTER, DAVIS, VAN NORTWICK, PADOVANO, LEWIS, POLSTON and HAWKES, JJ., CONCUR. ERVIN, J., CONCURS and DISSENTS WITH OPINION, in which BENTON and BROWNING, JJ., CONCUR.
ERVIN, J., concurring and dissenting.
I concur in affirming the issue relating to the trial court's submission of only part of the written instructions to the jury, because the court below correctly ruled that issue should have been raised on direct appeal. See Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995) (finding that issues which should have been raised on direct appeal were procedurally barred in postconviction proceeding). I also join the majority in affirming the issue regarding trial counsel's asserted ineffective assistance by failing to object to the lower court sending a portion of written instructions to the jury, because appellant's allegations failed to satisfy the test for ineffectiveness required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to the third issue, however, asserting counsel's defective assistance by not requesting a jury instruction on a necessarily lesser-included offense, I would reverse and remand for an evidentiary hearing or the attachment of portions of the record that conclusively demonstrate the appellant is not entitled to relief, in that I consider the issue to be facially sufficient and unrefuted by the record before us. Contrary to the majority's decision, I consider appellant's allegation that trial counsel's deficient performance deprived him of even the possibility of a jury pardon to be prima facie showing of prejudice.
On May 11, 1998, the appellant was charged with one count of aiding and abetting a robbery with a firearm[1] and one count of aiding and abetting burglary while armed. He was found guilty and was sentenced to 100 months of incarceration followed by five years of probation. The court instructed the jury on the following lesser-included offenses to aiding and abetting robbery while armed with a firearm: attempt, robbery, aggravated assault with a deadly weapon, assault and theft. The lower court, however, did not instruct the jury on the lesser-included offense of robbery with a weapon, which is classified in the Florida Standard Jury Instructions in Criminal Cases (p. 386) as a category-one or necessarily lesser-included offense,[2] and defense counsel did not object to its omission. In affirming as to this issue, the majority relies on and quotes extensively from Hill v. State, 788 So.2d 315 (Fla. 1st DCA 2001), review denied, 807 So.2d 655 (Fla.2002). It adopts the analysis advanced in Hill, and recedes from Bateson v. State, 516 So.2d 280 (Fla. 1st DCA 1987), and cases from this court specifically following it, saying that Bateson was "wrongly decided." Ante at 505. I disagree.
As reflected in the majority's opinion, the Florida Supreme Court declined to review the question certified in Hill. Initially, I question the wisdom of this court rushing headlong into yet another en banc proceeding and determining an issue that the supreme court refused to address little *510 more than one year before. I further question the necessity of receding from a case decided 15 years ago, which, as reflected in Hill, no less than seven cases have since followed, representing all of the state's appellate courts except the Third District. Finally, I have strong doubts that much of the language used in Hill as a basis for receding from Bateson is applicable to the instant case, because in Hill, as well as in Bateson, the jury instructions that were not given were permissive or category-two lesser-included offenses.[3] As stated, the lesser offense which appellant claims his lawyer should have requested below was robbery with a weapon, a necessarily lesser-included offense to the charged offense of robbery with a firearm.
Unlike permissive lesser-included instructions, a trial court's refusal to give an instruction on a necessarily lesser-included offense is per se reversible fundamental error. See Reddick v. State, 394 So.2d 417 (Fla.1981). Thus, much of the discussion in Hill regarding the Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), harmless error test, applicable to direct appeals but not to collateral proceedings, is immaterial in a case such as that now before us in which the offense is necessarily included, because if claimant's counsel had timely requested an instruction on robbery with a weapon and the trial court had refused it, the refusal would have been reversible on appeal without any consideration of whether the error was harmless. See Harris v. State, 438 So.2d 787, 796 (Fla.1983) ("This Court has consistently held that, upon a proper request, a trial judge must give jury instructions on necessarily included lesser offenses, that a refusal of such a request constitutes fundamental error when properly preserved for appeal by timely objection ... and that the harmless error rule does not apply."). See also Reed v. State, 837 So.2d 366, 27 Fla. L. Weekly S1045, S1046 (Fla. Dec. 19, 2002) ("all fundamental error is harmful error," that is, prejudicial). If, however, the instruction not given over objection was permissive, a harmless error analysis applies. The court explained the distinction as follows in State v. Abreau, 363 So.2d 1063, 1064 (Fla.1978):
[I]f a defendant is charged with offense "A" of which "B" is the next immediate lesser-included offense (one step removed) and "C" is the next below "B" (two steps removed), then when the jury is instructed on "B" yet still convicts the accused of "A" it is logical to assume that the panel would not have found him guilty only of "C" (that is, would have passed over "B"), so that the failure to instruct on "C" is harmless. If, however, the jury only receives instructions on "A" and "C" and returns a conviction on "A", the error cannot be harmless because it is impossible to determine whether the jury, if given the opportunity, would have "pardoned" the defendant to the extent of convicting him on "B" (although it may have been unwilling to make the two-step leap downward to "C").
The second example given in Abreau is precisely what occurred in the present case. The jury received an instruction on "A," the charged offense of robbery with a firearm, and "C," the permissive lesser offenses of attempt, aggravated assault, etc., two steps removed from "A," but it was not given any instruction on "B," the necessarily lesser offense to "A." As a result, if an objection had been timely made to such omission and a direct appeal *511 filed, no presumption could be indulged that the error was harmless.
There is, however, a far more substantial basis for following Bateson. Although Bateson, 516 So.2d at 282, states that "it is conceivable that defense counsel's failure to request a jury instruction as to the lesser included offenses ... deprived appellant of the possibility of a `jury pardon,' "and thus does not specifically track the "reasonable probability" test of Strickland, I do not consider the use of such language a sufficient basis to propel this court into an en banc proceeding because, in my judgment, Strickland's reasonable probability test was never intended to exclude from its ambit jury pardons. I therefore strongly question the assumption made in Hill, and adopted by the majority, that a jury's decision to pardon is one made irrationally, aberrantly, or in an unlawful manner.
We must assume that when Strickland was decided in 1984, the Court was aware of its earlier pertinent case law, particularly Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), in which the Court held that the death penalty could not be imposed following a jury's verdict of guilt of a capital offense when the jury had not been permitted to consider a verdict of guilt of a lesser-included non-capital offense, i.e., felony-murder, and the evidence would have supported such a verdict. At trial, Beck's defense was that although he participated in the robbery with a codefendant, Beck never intended for the victim to be killed. The state conceded that although the evidence supported Beck's entitlement to an instruction on the lesser offense of felony murder, Alabama law prevented it from being given in a capital offense prosecution. Beck was convicted and sentenced to death. In vacating the conviction due to the refusal of the trial court to give the instruction, the Court noted that unreliability is introduced into every case where the jury's decision must be all or nothing, i.e., instructions only on the offense as charged or acquittal, but the Court commented that due process of the law demanded yet another option, saying:
While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offensebut leaves some doubt with respect to an element that would justify conviction of a capital offensethe failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.
Id. at 637, 100 S.Ct. 2382.
The Court's decision in Beck was the logical result of what it had previously decided in Keeble v. United States, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), involving a challenge to a conviction of a federal crime. Justice Brennan, writing for the Court, explained:
[I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction in this context or any otherprecisely *512 because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third optionconvicting the defendant of simple assaultcould not have resulted in a different verdict.
Id. at 212-13, 93 S.Ct. 1993.
Based upon these statements in Beck and Keeble, it is inconceivable to me that the Court's references in Strickland to "a lawless decisionmaker" were intended to include a jury's intrinsic function as a dispenser of mercy. Consequently, I consider that the appellant has complied with all that Strickland demands of him at this level of the proceeding by demonstrating there is a reasonable probability that, but for counsel's unprofessional error in failing to request an instruction on a lesser offense necessarily included in that charged, the result at trial would have been different.
The difficulty with the Sanders/Hill approach is its failure to recognize how firmly entrenched the jury pardon concept has become in Florida's judicial system. It is a principle that had its roots in common law whereby the jury was permitted to find the defendant guilty of any lesser offense necessarily included within the offense charged. Beck, 447 U.S. at 633, 100 S.Ct. 2382. The first time the term "jury pardon" was used in Florida jurisprudence occurred when Justice Adkins commented in Bailey v. State, 224 So.2d 296, 297 (Fla. 1969), that the jury always had the right to convict a defendant of any lesser degree of the crime charged, even in the absence of proof of same.
Perhaps the best summary of the precept appears in Bufford v. State, 473 So.2d 795, 796 (Fla. 5th DCA 1985), as follows:
The jury pardon concept is a well-accepted principle throughout the majority of jurisdictions. See Manning v. State, 93 So.2d 716 (Fla.1957), Goodwin v. State, 157 Fla. 751, 26 So.2d 898 (1946) ("Fundamentally, the law has never condemned a verdict for inconsistency."); 4 Wharton's Criminal Procedure, § 575 (C. Torcia ed.1976); Annot, 18 A.L.R.3d 259 (1968). In Florida, courts have observed that an inconsistency in verdicts is the price for investing the jury with mercy dispensing powers. See Reeder v. State, 399 So.2d 445 (Fla. 5th DCA 1981); Damon v. State, 397 So.2d 1224 (Fla. 3d DCA 1981). Further, the preservation of the jury "pardon power" is the basis for the rule that the jury must be charged on all necessarily lesser included offenses. See State v. Thomas, 362 So.2d 1348 (Fla.1978); Cannon v. State, 456 So.2d 513 (Fla. 5th DCA 1984).
In sum, the pardon power allows the jury to "`temper ... justice with mercy' if such be warranted, it can reduce the charge." Potts v. State, 430 So.2d 900, 903 (Fla.1982), (quoting J. Milton, Paradise Lost, in 32 Great Books of the Western World, 276 (1952))[ ]. As stated by one commentator:

*513 The laws state the duties and liabilities in black and white terms. Human actions are frequently not as clean-cut. Judges themselves sometimes undertake, in sentencing, the search for a middle ground between the absolutes of conviction and acquittal. To deny the jury's share in this endeavor is to deny the essence of the jury's function which is finding a solution for those occasional hard cases in which `law and justice do not coincide.'
Bickel, Judges and JuryInconsistent Verdicts in Federal Courts, 63 Harv. L.Rev. 649, 651-52 (1950). See also Tucker v. State, 417 So.2d 1006, n. 10 at 1010 (Fla. 3d DCA 1982).
Judge Hubbart otherwise explained the concept in Nurse v. State, 658 So.2d 1074, 1078 n. 2 (Fla. 3d DCA 1995), in the following terms:
We recognize that Fla.Stand.Jury Instr. (Crim.) 2.02(a) authorizes the jury to consider a lesser included offense only if it decides that the charged offense has not been proved beyond a reasonable doubt, which, as the dissent correctly points out, seems to preclude a "jury pardon;" indeed, nowhere in the standard jury instructions is the jury ever instructed that it has the power of a "pardon." However, our law has always been somewhat schizophrenic on this point because in the jury's de facto power to find a defendant guilty of a lesser included offense, Florida law has always recognized that the jury, in fact, has a pardon power. This is so because we routinely acceptand do not set aside based on misconducta verdict where the jury has, in effect, ignored this instruction and found the defendant guilty of a lesser included offense, although it may be convinced based on highly persuasive evidence [and, indeed, such evidence may be uncontradicted] that the charged offense was, in fact, committed; we call such a verdict a "jury pardon" and do not disturb it. This long-standing practice may not be intellectually satisfying to legal purists, but, on the other hand, it allows juries to do substantial justice in extenuating circumstances, something which our law has always prized.
The Sanders/Hill postulate that a jury would act irrationally if it found a defendant guilty of a lesser-included offense to that charged, regardless of the degree of proof supporting the conviction for the higher offense, overlooks the crucial nature of a jury's province: "Whether the evidence is susceptible of inference by the jury that the defendant is guilty of a lesser offense than that charged is a critical evidentiary matter exclusively within the province of the jury. Fundamental trial fairness requires that a defendant being tried for robbery should be permitted to have an instruction on a lesser-included offense upon timely request." State v. Bruns, 429 So.2d 307, 309-10 (Fla.1983) (citations omitted).
Finally, consistency in a jury's verdict has never been demanded in the context of the jury's right to exercise its pardon power. As explained by Professor Perkins:
"[I]f the jury decides upon a partial `pardon' and returns a verdict of guilty on one count and not guilty on another, it is certainly unwise to have a procedure which requires the judge to enter verdicts of acquittal on both counts if the verdict is found to be inconsistent.
The jury's mercy-dispensing power or power of lenity, to use Hand's term necessarily includes the power to return an inconsistent verdict. Let it stand."
Damon v. State, 397 So.2d 1224, 1228 n. 10 (Fla. 3d DCA 1981) (quoting Perkins, Dealing with the Inconsistent Verdict, 15 Criminal Law Bulletin 405 (1979)).
*514 In conclusion, I seriously doubt that Strickland's "reasonable probability" test was designed to be inapplicable to jury pardons. Such a function is intrinsic to a jury's fact-finding determination, whether or not grounded on the evidence. After all, juries, like judges, have the authority to dispense mercy.[4] To label a jury as irrational or lawless in so acting reflects a fundamental misunderstanding of a jury's responsibilities.
NOTES
[1] Robbery with a firearm is a felony of the first degree, punishable by a term of years not exceeding life. § 812.13(2)(a), Fla. Stat. (1997).
[2] Appellant received a guideline sentence for robbery with a firearm, which is scored as a level-nine offense, while the lesser offense of robbery with a weapon is a level-eight offense; thus, both offenses are assessed different guideline points. See § 921.012, Fla. Stat. (Supp.1998).
[3] A category-two permissive lesser offense is an offense "which may or may not be included in the offense charged, depending upon. (a) the accusatory pleading, and (b) the evidence at trial." Brown v. State, 206 So.2d 377, 383 (Fla.1968).
[4] As the Great Bard wrote some 400 years ago:

The quality of mercy is not strained,
It droppeth as the gentle rain from heaven
Upon the place beneath. It is twice blessed:
It blesseth him that gives, and him that takes,
`Tis mightiest in the mightiest, it becomes The thronéd monarch better than his crown:
His sceptre shows the force of temporal power,
The attribute to awe and majesty, Wherein doth sit the dread and fear of kings:
But mercy is above this sceptred sway,
It is enthronéd in the hearts of kings,
It is an attribute to God himself;
And earthly power doth then show likest God's,
When mercy seasons justice.
William Shakespeare, The Merchant of Venice, act 4, sc. 1.