CANADY, J.,
dissenting.
Once again, the jury pardon doctrine rears its ugly head. I would recede from State v. Lucas, 645 So.2d 425 (Fla. 1994)— a flawed opinion rooted in the inherent lawlessness of the jury pardon doctrine. I therefore dissent from the decision here, which relies on Lucas.
Fundamental error did not occur in this case: there is no logical way to conclude that the defendant’s conviction for attempted second-degree murder occurred because of the trial court’s incomplete jury instruction on the lesser included offense of attempted manslaughter. The majority orders a new trial simply because the trial judge did not instruct the jury as to a matter, for which there was no evidentiary basis, regarding a lesser included offense. Instead of actively facilitating the possibility of jury lawlessness by ordering a new trial, I would answer the certified question in the negative, quash the district court’s decision, and leave the lawful conviction undisturbed. Ordering a new trial damages the rule of law.
This Court has previously called into question the jury pardon doctrine without affirmatively repudiating it. See Sanders v. State, 946 So.2d 958 (Fla. 2006). In Sanders, despite noting that the jury pardon doctrine had “become a recognized part of the [criminal legal] system” in Florida, id. at 959, this Court held that “[t]he possibility of a jury pardon cannot form the basis for a finding of prejudice” in postconviction claims for relief based on alleged ineffective assistance of counsel, id. at 960. As I have previously explained, this Court should repudiate the jury pardon doctrine because it “is inconsistent with the pertinent rule of criminal procedure, embeds *489 contradiction in the jury instruction process, encourages irrational jury verdicts, and is corrosive of the rule of law.” Haygood v. State, 109 So.3d 735, 746 (Fla. 2013) (Canady, J., dissenting); see also State v. Wimberly, 498 So.2d 929, 932-35 (Fla. 1986) (Shaw, J., dissenting). But at a bare minimum, I believe this Court should recede from Lucas and extend this Court’s reasoning in Sanders to the instant case— a case in which the defendant failed to object to an incomplete jury instruction on attempted manslaughter, the incomplete instruction involved a matter for which there was no evidentiary basis, the defendant was convicted of attempted second-degree murder, and attempted second-degree murder was proven beyond a reasonable doubt.
After briefly examining the jury pardon doctrine, I explain why the reasoning of Sanders should be applied to the instant case. I then explain how the majority’s adherence to Lucas ignores the actual test for fundamental error and produces a nonsensical result. Finally, I explain why the majority’s new Lucas “exception” should apply to this case.
I. The Jury Pardon Doctrine
Lucas and the instant case are premised on Florida’s jury pardon doctrine and the notion that a defendant has the fundamental right to be instructed on certain lesser included offenses. As this Court has explained, under Florida’s jury pardon doctrine, “[a] jury must be given a fair opportunity to exercise its inherent ‘pardon’ power by returning a verdict of guilty as to the next lower crime.” State v. Montgomery, 39 So.3d 252, 259 (Fla. 2010) (quoting Pena v. State, 901 So.2d 781, 787 (Fla. 2005)); see also Wimberly, 498 So.2d at 932 (“The requirement that a trial judge must give a requested instruction on a necessarily lesser included offense is bottomed upon a recognition of the jury’s right to exercise its ‘pardon power.’ ” (citing State v. Baker, 456 So.2d 419, 422 (Fla. 1984))).
Contrary to this Court’s jurisprudence, the United States Supreme Court has never recognized a defendant’s fundamental right to be instructed on one-step-removed necessarily lesser included offenses. See, e.g„ Hopper v, Evans, 456 U.S. 605, 611-12, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (“[D]ue process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction .... The federal rule is that a lesser included offense instruction should be given ‘if the evidence would permit a jury rationally to And [a defendant] guilty of the lesser offense and acquit him of the greater.’”) (third alteration in original) (quoting Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973)). Indeed, the Supreme Court concluded in Hopper that “[a]n instruction on the offense of unintentional killing” was unwarranted in a case in which “[t]he evidence not only supported the claim that [the defendant] intended to kill the victim, but affirmatively negated any claim that he did not intend to kill the victim.” Id. at 613, 102 S.Ct. 2049.
Instead of embracing Florida’s jury pardon doctrine—as the majority does by ordering a new trial—this Court should follow the Supreme Court’s lead. As explained below, applying the reasoning of Sanders to this case would be a sensible first step in that direction.
II. The Reasoning of Sanders Should Apply to this Case
Sanders was a postconviction case, but this Court’s reasoning in Sanders should nevertheless be extended to the instant case. Sanders addressed two consolidated cases involving postconviction claims of ineffective assistance of counsel—Sanders v. State, 847 So.2d 504 (Fla. 1st DCA *490 2003), and Willis v. State, 840 So.2d 1135 (Fla. 4th DCA 2003). In both cases, the defendants were charged with robbery with a firearm. Sanders, 946 So.2d at 955. Each trial court instructed the jury on the charged offense and on certain permissive and necessarily included lesser offenses but failed to instruct the jury on the category-one necessarily lesser included offense of robbery with a weapon. Id. Defense counsel neither requested the omitted instruction nor objected to the trial court’s failure to read the instruction. Id. Both defendants were convicted of the charged offense and later brought postconviction claims for relief alleging ineffective assistance of counsel based on defense counsel failing to request the omitted instruction. Id. The trial courts summarily dismissed the respective motions for relief, and the defendants appealed—Sanders to the First District Court of Appeal, and Willis to the Fourth District Court of Appeal. Id.
The First District upheld the trial court’s summary denial of Sanders’ motion, holding that counsel’s failure to request the instruction “does not create a reasonable probability that the jury, given the opportunity, would have returned a guilty verdict only as to the lesser offense.” Id. (citing Sanders, 847 So.2d at 508). Conversely, the Fourth District reversed the trial court’s summary dismissal of Willis’s motion, holding that counsel’s failure to request the instruction was “a legally sufficient ground to support an ineffective assistance of counsel claim.” Id. (quoting Willis, 840 So.2d at 1136). The Fourth District then certified conflict with the First District’s decision. Id.
On review, this Court held that the trial courts properly denied the defendants’ claims because the defendants failed to prove ineffective assistance under the Supreme Court’s Strickland[3] test which requires a defendant to prove the following two elements: (1) deficient performance by counsel; and (2) that the deficient performance prejudiced the defense. Sanders, 946 So.2d at 956 (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052). After acknowledging that a defense counsel’s failure to request an instruction on a necessarily included lesser offense likely satisfies the first Strickland prong, id. at 959, this Court primarily focused on the second Strickland prong—the “prejudice” prong—under which a defendant must show “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different,” id. at 956 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). In other words, “[a]s the Supreme Court has warned, to demonstrate prejudice ‘[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.’ Rather, ‘the defendant must show that they actually had an adverse effect on the defense.’ ” Id. at 956 (second alteration in original) (citation omitted) (quoting Strickland, 466 U.S. at 693,104 S.Ct. 2052).
In reaching its conclusion, this Court went through a lengthy examination of the jury pardon doctrine, noting its numerous inherent flaws. Namely, despite recognizing that the jury pardon doctrine had “become a recognized part of the [criminal legal] system” in Florida, id. at 959, this Court described jury pardons as having a “suspect pedigree,” id. and as being “without legal foundation,” id. at 958. This Court also noted that “[b]y definition, jury pardons violate the oath jurors must take before trial, as well as the instructions the trial court gives them.” Id. This Court described those violations as follows:
*491 Although the jury also is instructed about lesser-included offenses, the instruction specifically allows the jury to consider a lesser-included offense only if it “decidefs] that the main accusation has not been proved beyond a reasonable doubt.” Fla. Std. Jury Instr. (Crim.) 3.4. The United States Supreme Court restates these instructions as a simple duty: “Jurors ... take an oath to follow the law as charged, and they are expected to follow it.” United States v. Powell, 469 U.S. 57, 66, 105 S.Ct. 471, 88 L.Ed.2d 461 (1984) (citing Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)).
Id. (alterations in original).
Sanders eventually held that as a matter of law, “[t]he possibility of a jury pardon cannot form the basis for a finding of prejudice.” Id. at 960. In so holding, Sanders repeatedly noted that the defendants had not raised any issues which called into question the juries’ findings of guilt beyond a reasonable doubt as to the charged crimes. Id. at 957, 960.
Although Sanders involved a claim for postconviction relief as opposed to a direct appeal, the reasoning of Sanders regarding prejudice is irreconcilable with the majority’s conclusion that fundamental error occurred in this case. For the same reason that Sanders concluded that prejudice could not be established, fundamental error cannot be established in this case.
Sanders itself drew a distinction between posteonvietion motions and direct appeals:
As the First District noted below, “the test for prejudicial error in conjunction with a direct appeal is very different from the test for prejudice in conjunction with a collateral claim of ineffective assistance.” Sanders, 847 So.2d at 506 (quoting Hill[ v. State], 788 So.2d [315,] 318 [ (Fla. 1st DCA 2001) ]). “These differences clearly make reversal on direct appeal for the trial court’s failure to give an instruction on a requested lesser included offense logical, and relief granted in collateral proceedings for trial counsel’s failure to request such an instruction illogical.” Vickery[ v. State], 869 So.2d [623,] 626 [ (Fla. 5th DCA 2004) ] (Sawaya, C.J., concurring specially).
Id. at 959. But an examination of the context of the cited quotation from Hill reveals why such a distinction is not relevant here:
[T]he test for prejudice on direct appeal is the harmless error test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), under which trial court error will result in reversal unless the prosecution can prove “beyond a reasonable doubt” that the error did not contribute to the verdict obtained. Conversely, however, as explained in Strickland, prejudice may be found in a collateral proceeding in which ineffective assistance of counsel is claimed only upon a showing by the defendant that there is a “reasonable probability” that counsel’s deficient performance affected the outcome of the proceeding.
Hill, 788 So.2d at 318-19. There is a great gulf between the direct appeal harmless error standard and the postconviction prejudice standard. And there is no less a gulf between harmless error and fundamental error.
In the instant case, the defendant did not object to the incomplete attempted manslaughter instruction. Thus, the test here is not the harmless error standard referenced in Hill. Rather, the proper test is whether fundamental error occurred. See majority op. at 484 (quoting State v. Weaver, 957 So.2d 586, 588 (Fla. 2007) (quoting Reed v. State, 837 So.2d 366, 370 (Fla. 2002))). “Fundamental error is that *492 which ‘reaches down into the validity of the trial itself to the extent that a verdict ... could not have been obtained without [that] error.’” Floyd v. State, 850 So.2d 383, 403 (Fla. 2002) (alterations in original) (quoting Archer v. State, 673 So.2d 17, 20 (Fla. 1996)).
This Court has described the fundamental error standard as an “exacting standard” under which, in order “for error to meet this standard, it must follow that the error prejudiced the defendant.” Reed, 837 So.2d at 370 (emphasis added). Given the “exacting” fundamental error standard involved, the distinction in Sanders between direct appeal (harmless error) and post-conviction relief (actual prejudice) is not applicable here. This Court has repeatedly held that the fundamental error standard is no less exacting than the Strickland prejudice standard. See, e.g., Wright v. State, 213 So.3d 881, 911, 2017 WL 1064515, at *22 (Fla. Mar. 16, 2017) (“Despite the distinctions between the fundamental error standard and the Strickland prejudice standard, this Court has held that a previous finding upon appeal that statements by a prosecutor failed to rise to fundamental error precludes a determination of prejudice in the Strickland context.”); Hayward v. State, 183 So.3d 286, 327 (Fla. 2015) (“If the issue is not preserved by trial counsel, appellate counsel is only deficient in failing to assert it on appeal if it is fundamental error .... ”); Lowe v. State, 2 So.3d 21, 38 (Fla. 2008) (“Because the Court found no fundamental error, Lowe fails to demonstrate that counsel’s failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the trial under Strickland.”); Chandler v. State, 848 So.2d 1031, 1046 (Fla. 2003) (“Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel’s failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the Strickland test.”).
If an error that is not fundamental cannot be prejudicial under the Strickland standard, the converse is also true. After all, Strickland prejudice requires the showing of “a reasonable probability that ... the result of the proceeding would have been different,” Sanders, 946 So.2d at 956 (emphasis added) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052), whereas fundamental error requires a showing that the “verdict ... could not have been obtained without [that] error,’ ” Floyd, 850 So.2d at 403 (alterations in original) (emphasis added) (quoting Archer, 673 So.2d at 20).
Here, the majority offers no explanation of how the defendant was prejudiced or how the result logically could have been different if the jury had been instructed on justifiable and excusable attempted homicide. Rather, the majority’s ordering of a new trial is premised on the notion that the incomplete instruction could have “had some conceivable effect on the outcome of the proceeding.” Sanders, 946 So,2d at 956 (quoting Strickland, 466 U.S. at 693, 104 S.Ct. 2052). Sanders establishes that such a notion is insufficient to show prejudice under Strickland. Under the reasoning of Sanders, such a notion should similarly be insufficient to show prejudice under the “exacting” fundamental error standard. Consequently, the reasoning of Sanders should be applied to this case—namely, that a showing of prejudice cannot be based “on the possibility of a jury pardon, which by definition assumes that the jury would have disregarded the law, the trial court’s instructions, and the evidence presented.” Id. As explained below, the majority’s failure to adopt the reasoning of Sanders grossly distorts our fundamental *493 error doctrine and produces a nonsensical result.
III. The Majority’s Adherence to Lucas Ignores the Actual Test for Fundamental Error and Produces a Nonsensical Result
In concluding that fundamental error occurred, the majority cites the proper test to be employed in determining fundamental error and then inexplicably fails to perform an analysis under that test. Not surprisingly, an analysis under that test results in an affirmance of the conviction below.
The majority notes the test for determining fundamental error as follows:
To justify not imposing the contemporaneous objection rule, “the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Brown[ v. State], 124 So. 2d [481, 484 (Fla. 1960) ]. In other words, “fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.” Stewart v. State, 420 So.2d 862, 863 (Fla. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1802, 76 L.Ed.2d 366 (1983).
Majority op. at 484-85 (alterations in original) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla. 1991)). The majority then offers no explanation of how the defendant’s conviction for attempted second-degree murder “could not have been obtained without the assistance of [the incomplete instruction as to attempted manslaughter].” Brown, 124 So.2d at 484. Instead, the majority simply reasons that manslaughter cannot be defined without an explanation of justifiable and excusable homicide and concludes that “justifiable and excusable homicide are always in dispute by virtue of the statutory definition of manslaughter.” Majority op. at 486. Thus, fundamental error is determined to have occurred here because attempted second-degree murder is “not more than one step removed” from attempted manslaughter. In other words, the majority simply relies on Lucas.
The majority’s unarticulated explanation for finding fundamental error, of course, is that the jury somehow might have otherwise exercised its inherent jury pardon power had the complete attempted manslaughter instruction been read. But such an explanation ignores the test for fundamental error and is untethered from the evidence, which negates a conclusion of justifiable or excusable attempted homicide.
While purporting to apply our traditional fundamental error test, the majority effectively applies a “structural” error standard—akin to the per se reversible error analysis applied by this Court’s majority in Johnson v. State, 53 So.3d 1003 (Fla. 2010). In Johnson, this Court’s majority found that per se reversible error occurred where defense counsel timely objected to a trial court’s erroneous instruction to the jury that there would be no reading back of any testimony. The rationale underpinning the majority’s decision in Johnson was that it was “impossible to determine the effect of the erroneous instruction on the jury without engaging in speculation.” Id. at 1005. Indeed, the Johnson majority justified the use of the per se reversible error standard in that case by relying on a jury pardon example:
Another circumstance in which this Court has held that an error is per se reversible because the reviewing court cannot conduct a harmless error analysis is when a jury is not instructed on a lesser-included offense one step removed from the charged offense. In such a situation, the reviewing court cannot determine the effect of the error on the *494 jury because the court cannot know whether the jury would have convicted the defendant of the next lesser included offense if the jury had been given the option. As explained by this Court: “If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense.” Pena v. State, 901 So.2d 781, 787 (Fla. 2005) (citing State v. Abreau, 363 So.2d 1063 (Fla. 1978)). To conduct a harmless error analysis in that situation would be to engage in pure speculation.
Johnson, 53 So.3d at 1008. The Johnson majority’s rationale is the same rationale underpinning the majority’s decision in this case. And yet in this case the only possible issue upon which to “speculat[e],” id. is whether the jury would have ignored the evidence and issued an unlawful jury pardon.
Of course, the hallmark of structural error is a “defect! ] in the constitution of the trial mechanism.” Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L,Ed.2d 302 (1991). The Supreme Court has made clear that there are very few categories of errors which constitute structural error. See United States v. Davila, — U.S. —, 133 S.Ct. 2139, 2149, 186 L.Ed.2d 139 (2013) (“Errors of this kind include denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt.”); United States v. Marcus, 560 U.S. 258, 263, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010) (“ ‘[Structural errors’ are ‘a very limited class’ of errors .... ”); United States v. Dominguez Benitez, 542 U.S. 74, 81, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (“It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake’s effect on the proceeding.”). Here, the incomplete attempted manslaughter instruction undoubtedly does not fall within the Supreme Court’s limited class of structural errors. See Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 36 (1999) (“The error at issue here—a jury instruction that omits an element of the offense—differs markedly from the constitutional violations we have found to defy harmless-error review.”).
Ultimately, the majority’s finding of fundamental error rests on nothing more than the possibility of a lawless decision by the jury. Failing to perfectly facilitate a lawless result is neither a “defect[] in the constitution of the trial mechanism,” Ful-minante, 499 U.S. at 309, 111 S.Ct. 1246, nor an error that “reach[es] down into the validity of the trial itself,” Brown, 124 So.2d at 484. Consequently, the majority’s finding cannot be reconciled with either the structural error standard or this Court’s traditional fundamental error test—as properly applied.[4]
The majority’s distortion of our fundamental error doctrine thus ends up producing a nonsensical result. On the one hand, as a matter of law, a defendant is unable to rely on the possibility of a jury pardon to show prejudice under Strickland in a case in which a requisite lesser included offense instruction was never even read to the jury. See Sanders, 946 So.2d 953. Yet on the other hand, a defendant somehow is able to rely on the possibility of a *495 jury pardon to show prejudice under the “exacting” fundamental error standard in a case in which the requisite lesser included offense instruction was read to the jury— except for a portion relating to a matter for which there was no evidentiary basis. That sort of illogical outcome can only flow from adherence to bad precedent. It vividly illustrates the jurisprudential chaos that results from adherence to the jury pardon doctrine. The actual test for fundamental error requires that the conviction below be left undisturbed, because the “validity of the trial” was not compromised and there is no way to conclude that the defendant’s conviction for attempted second-degree murder occurred because of the trial court’s incomplete jury instruction for the lesser included offense of attempted manslaughter. See Delva, 575 So.2d at 644-45.
IV. The Majority’s New Lucas “Exception” Should Apply to this Case
The majority recognizes a second exception to Lucas—namely, “where a defendant expressly concedes that a homicide or an attempted homicide was neither justified nor excusable.” Majority op. at 487. In support of this new exception, the majority notes this Court’s previous determination “that the failure to instruct on an undisputed element of an offense is not fundamental error, and there must be an objection to preserve the issue for appeal.” Majority op. at 486 (citing Reed, 837 So.2d at 369; Delva, 575 So.2d at 645). The majority also notes this Court’s recent reiteration of that principle in Griffin v. State, 160 So.3d 63, 69 (Fla. 2015). Majority op. at 487. After recognizing this new Lucas exception, the majority then declines to extend its application to the instant case, relying in large part on Griffin.
Griffin involved a homicide case in which the defendant was charged with second-degree murder and asserted the sole defense of misidentification. Griffin, 160 So,3d at 65. At trial, the trial court properly instructed the jury on second-degree murder. Id, at 66. The trial court also instructed the jury on manslaughter, but the manslaughter instruction was the same standard jury instruction which this Court had previously determined to be fundamentally erroneous in certain instances, because the instruction implied an intent-to-kill element for manslaughter, even though no such element is present in manslaughter—or even in second-degree murder, for that matter. Id.; see also Montgomery, 39 So.3d at 254-60. The defendant did not object to the manslaughter instruction. Griffin, 160 So.3d at 66. The defendant was convicted of second-degree murder and appealed on the basis that the erroneous manslaughter instruction constituted fundamental error. IcL The Second District affirmed the conviction, finding that by relying on the defense of misidenti-fication, the defendant failed to dispute any of the elements of the offense, including intent. Id. This Court quashed the Second District’s decision and remanded for a new trial, concluding that the defendant’s sole defense of misidentification “did not concede the element of intent as to the shooting,” id. at 69, and that the jury still was required to determine “the issue of ‘intent’—either ill will, hatred, spite, or evil intent as is embodied in the depraved mind element of second-degree murder or the lack of any intent to kill as in the offense of manslaughter,” id. at 70.
The rationale underlying Griffin simply does not apply here. Griffin involved a jury instruction that erroneously implied that intent to kill was a requisite element of manslaughter. Thus, irrespective of whether the defendant claimed misidentification, the instruction itself was problematic because it misstated the law and suggested a higher degree of intent was required for *496 manslaughter than for second-degree murder. Here, the manslaughter instruction properly explained that manslaughter only requires an intent to commit an act which results in death. The imperfection in the instruction in this case involves solely whether the attempted homicide was justifiable or excusable—that is, whether the conduct was criminal or lawful. Indeed, Griffin itself clearly distinguished the issue of intent from the issue of justifiable or excusable homicide: “[0]nce the jury determined that the homicide was not justifiable or excusable, the intent underlying the unlawful homicide was pertinent or material to what the jury had to consider in order to convict Griffin of second-degree murder or the lesser offense of manslaughter by intentional act.” Id, at 69.
The majority concludes that Spencer did not “expressly concede” that the “attempted homicide was neither justified nor excusable,” explaining as follows: “During closing statements, counsel admitted that a crime was committed, but asserted that the evidence ‘doesn’t point to who committed it.’” Majority op. at 487. The majority goes on to note that Spencer argued that his recorded statement—in which he previously admitted to committing the shooting—-was a false confession and the “product of his desire to gain ‘street credibility.’ ” |d. In other words, the newly recognized exception is somehow not applicable because although Spencer’s counsel admitted that a. crime was committed, he claimed that the evidence did not point to Spencer as the perpetrator. As an initial matter, it is unclear how Spencer’s recorded statement— or, more specifically, his backpedaling therefrom—has any relevance to the issue of excusable or justifiable attempted homicide. Moreover, the majority references Spencer’s counsel’s closing statements but fails to provide a complete picture of those statements.
During closing arguments, counsel repeatedly conceded that a crime had been committed:
[A]nd make no mistake, there are victims. . They have proven a case that two people were shot. They have proven that. Beyond a reasonable doubt, no question, they have proven that.... They have proven that they have a .45 caliber weapon here that was used in that crime.... [Everything you have here ... points to a crime being committed. It doesn’t point to who committed it.... The question is has the State of Florida proven its case beyond a reasonable doubt that Damani Spencer did this? Or have they just proven that someone did this? And that’s the question.
Spencer’s sole defense was that he did not commit the crime—a crime that was proven beyond a reasonable doubt by the State. Nothing even remotely implicates justifiable or excusable attempted homicide. In an attempt to explain this away, the majority refers to the special nature of manslaughter as a residual offense: “[J]us-tifiable and excusable homicide are always in dispute by virtue of the statutory definition of manslaughter. We have previously stated that, ‘Characterized by what it is not, manslaughter is considered a residual offense,’ ” Majority op. at 486 (second alteration in original) (quoting Montgomery, 39 So.3d at 258). But the majority overlooks that this Court has described justifiable and excusable homicide as “defenses” to the crime of manslaughter. See, e.g., Miller v. State, 573 So.2d 337, 337 (Fla. 1991), Indeed, justifiable and excusable homicide are defenses to any charge of unlawful homicide, including second-degree murder. As this Court recognized in Griffin, “[a] homicide found to be unlawful is not automatically just one offense, but will be one of several possible homicide offenses depending upon the nature of the *497 intent or the lack of any intent at the time of the homicide.” Griffin, 160 So.3d at 68.
By repeatedly conceding that a “crime” was proven by the State, Spencer’s counsel “expressly concede[d]” that the conduct at issue was unlawful—that is, that it was neither justifiable nor excusable. Majority op. at 487. This concession by counsel, however, did not otherwise obviate the State’s burden of having to prove the “degree of the offense based upon the intent.” Griffin, 160 So.3d at 68 (emphasis added). Indeed, despite counsel’s repeated concessions, the State was still required to prove the depraved mind element of attempted second-degree murder. And the State did exactly that—beyond a reasonable doubt.
How the majority’s new Lucas exception does not apply to this case is a mystery.
Y. Conclusion
Lucas and the instant case represent this Court’s most extreme application of the jury pardon doctrine. Fundamental error is determined to have occurred and a new trial is ordered because of an unob-jected-to incomplete instruction on a lesser offense, even though: (1) the omitted portion of the instruction on the lesser offense involved a matter for which there was no evidentiary basis; (2) there was no error with the instruction on the charged offense; (3) the jury convicted as to the charged offense; (4) the State proved the charged offense beyond a reasonable doubt; and (5) conviction of the lesser offense could only result from a willful defiance of the instruction properly given to the jury. To describe this is to discredit it. We should recede from Lucas and pave the way for abrogating the jury pardon doctrine entirely. I dissent.
POLSTON and LAWSON, JJ„ concur.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. Even if it is accepted that the "right” to a jury pardon should be facilitated and preserved, it is absurd to believe that a jury determined to produce such a lawless result would have been in the slightest bit impeded by the totally irrelevant imperfection in the jury instruction here. There is no line of reasoning that can support such a conclusion.